THE STATE ex rel. W. ESPY CURTIS v. BROADDUS et al., Judges of Kansas City Court of Appeals.

**In Banc, December 16, 1911.**

1. **SUPREME COURT: Superintending Control.** In the constitutional provision giving "the Supreme Court general superintending control over all inferior courts" and the amendment.of 1884 declaring "the Supreme Court shall have superintending control over the Courts of Appeals by *mandamus*, prohibition and *certiorari*," there is no attempt to define or limit the superintending control of the Supreme Court except to indicate that the instrumentalities through which this control may be exercised shall be by writs of *habeas corpus*, *mandamus*, *quo warranto*, *certiorari*, prohibition and other original remedial writs; and the provision of section 6 of the amendment pointing out the method by which a Court of Appeals may transfer a cause to the Supreme Court and requiring the Supreme Court upon such transfer to "rehear and determine the cause," does not, in any degree, deprive the Supreme Court of the superintending control over inferior courts given to it by the Constitution. The Supreme Court has power to review the rulings of a Court of Appeals in any case, and it is its duty to exercise the power whenever in its judgment justice demands its exercise.

   *Held*, by WOODSON, J., dissenting, that the Supreme Court has no authority to review by *certiorari* the unanimous decision of a Court of Appeals in a case over which it has jurisdiction, unless one of the judges thereof shall deem the decision to be in conflict with a previous decision of one of said Courts of Appeals or of the Supreme Court; and to now hold otherwise is both to overrule a long line of uniform decisions and to destroy the usefulness of said Courts of Appeals.

2. ———: ———: **Former Adjudication in Same Case: Disregard By Court of Appeals: Certiorari.** Where the Supreme Court has decided on plaintiff's appeal that his evidence, in the face of a demurrer thereto, made out a prima facie case, and remanded the cause for a new trial, and at the new trial a judgment was rendered for plaintiff, and on defendant's appeal to the Court of Appeals, upon the same facts, as shown by the full record in each appeal, that court reversed the judgment, the Supreme Court will, by its writ of *certiorari*, review the action of the Court of Appeals. A decision by the Supreme Court in a case, as to all matters therein decided, became *res adjudicata*, not only at a subsequent trial of the same case in the circuit

court, but upon appeal to a Court of Appeals; and a Court of Appeals, upon a subsequent appeal, upon the same facts, in the same case, is not at liberty to disregard the former decision in the Supreme Court. The right of the Supreme Court to reverse its opinion on a second appeal in the same cause, does not imply that a Court of Appeals has the right to reverse that decision on a subsequent appeal of the same cause to it.

3. ———: ———: ———: ———: Reading Record to Ascertain Facts were Same. It is the right of counsel to file the abstract of the record of the appeal to the Supreme Court in the Court of Appeals, in support of their motion for a rehearing, upon a decision by the latter court refusing to follow the decision of the Supreme Court in the same case; and it is the duty of the Court of Appeals to read said record of the first trial, and from it determine whether or not the issues presented upon the second appeal had been settled and determined upon the same facts in the first appeal to the Supreme Court.

*Held*, by FERRISS, J., dissenting, that where the decision of the Supreme Court stated the facts upon which its decision was based and stated them erroneously, the Court of Appeals, upon a different state of facts abstracted from the record in the second appeal brought to it, is not bound to compare both abstracts and determine therefrom that the facts in both were the same; and if the decision of the Court of Appeals, to the effect that the facts were different, is based on the facts as stated in the decision of the Supreme Court, then it should not be held that the Court of Appeals was bound to follow the prior decision. But if the facts were not stated in the decision of the Supreme Court there would be much force in the contention that the Court of Appeals on the second appeal, having both abstracts before it, should examine each to ascertain if the facts at each trial were the same.

*Held*, also, that, where the Court of Appeals could not say that the former decision in the same case by the Supreme Court was independent of the facts erroneously stated therein, it is at liberty to render its own opinion on the facts shown by its own record.

4. ———: ———: ———: ———: ———: Erroneous Statement of Facts in Former Opinion: Time Essence of Contract. Defendants entered into a contract reciting that "in consideration of" plaintiff "purchasing from us one-sixteenth interest in" certain lots, "we guarantee and promise to purchase it back from him October 6, 1890, if he desires and requests, at the price he paid us for same, paying him back all the money he paid into and for the same, with interest at ten per cent per annum from date of purchase." On September 13, 1890, plaintiff by letter

State ex rel. v. Broaddus.

gave defendants "notice that on October 6, 1890, I shall be ready to receive the cash and turn my interest over to you." On September 20 he wrote a like letter, and on September 30 asked defendants to prepare and forward such a deed as they desired for a reconveyance of the property to them, to be executed by plaintiff upon the payment of the amount paid by him to them and interest. On November 20 plaintiff called on defendants and was told by them they could not repurchase the lots. On December 1 he tendered to them a deed and demanded a return of the purchase money with interest. Said tender being rejected, he brought suit for the purchase money, with interest. At the trial the court sustained a demurrer to the evidence, and on appeal to the Supreme Court this judgment was reversed and the cause remanded, the opinion holding that plaintiff's evidence made a prima facie case, and stating, among other things, that "before and on October 6, 1890, plaintiff asked defendant to prepare such a deed as he desired and offered to execute it," and that "previous to that date and on that date notified them that he desired them to so repurchase, and requested them to do so." On the retrial there was a judgment for plaintiff, and defendant appealed to the Court of Appeals, which reversed the judgment, holding that time was of the essence of the contract, that the evidence did not show any tender of a deed or request to repurchase on October 6, 1890, and that therefore plaintiff could not recover. Thereupon plaintiff filed a motion for a rehearing, and in connection therewith the abstract of the record in the appeal of the case to the Supreme Court. The court overruled the motion, stating that it based its decision on the recital in the opinion of the Supreme Court that the tender and request for repayment was made on October 6, 1890, and assuming that recital to be a true statement of the then facts its own record showed that there was no tender or offer on that date, and hence the facts in judgment were different and called for a different decision. An examination of the abstracts in each appeal shows that no tender or request for a repayment was made on October 6, and the statement in the opinion of the Supreme Court that such tender and request were made on that day was erroneous. The two records show that the facts as to notice, tender of deed and request for repayment were the same at each trial. Plaintiff sued out a writ of *certiorari* in this court to the Court of Appeals, claiming the latter court was bound by the former decision of the Supreme Court, and that the point on which that court made its decision to turn was already *res adjudicata.*

*Held,* that the Supreme Court has jurisdiction by its writ of *certiorari* in such case to review the action of the Court of Appeals. [WOODSON, J., dissenting.]

*Held*, that it was the duty of the Kansas City Court of Appeals to consider the abstract of the record in the former appeal of the same case to the Supreme Court, for the purpose of ascertaining that the facts at the two trials as to tender of deed and request for repayment were the same; that the statement in the opinion of the Supreme Court that plaintiff elected to resell the property to defendants on October 6, 1890, was a mere inadvertance of the court, a statement of the legal effect of the plaintiff's election a few days before that date to resell the property, was not intended to specifically say that the election was made on that day, and that the decision was that his election to resell made a few days before that day was in legal effect the same as if it had been made on that day; and that this inadvertent recital in the opinion, shown by the abstract to have been not strictly accurate, should not be permitted to justify the Court of Appeals in holding that the facts were different, and being the same the point was *res adjudicata*, and the Court of Appeals exceeded its jurisdiction when it attempted to announce a conflicting judgment. [LAMM, WOODSON and FERRISS, JJ., dissenting.]

*Held*, by FERRISS, J., dissenting, that had the opinion of the Supreme Court not shown the facts on which it was based, it would be fair to assume that its decision was based upon the facts contained in the abstract of the record, and there would be a great deal of force in the contention that the Court of Appeals, having before it both records, should have examined the record filed in the Supreme Court to ascertain whether the facts were the same on each appeal; but as there can be no doubt that the decision of the Supreme Court was properly regarded by the Court of Appeals as applying to the facts stated in the opinion, and as it does not clearly appear that it was held in that decision that plaintiff had a cause of action even if no tender or offer were made on October 6, 1890, the Supreme Court should not hold that its former decision on the point was independent of whether plaintiff acted on that date; and the Court of Appeals, having ascertained that the facts stated in the former opinion were different from the facts found in its own record, was at liberty to determine, unembarrassed by the former decision, that a failure to make tender of the deed and to request a repayment on the particular day named in the contract, was a bar to plaintiff's right to recover, and the decision of that point, when it came before the Court of Appeals, was not, under the circumstances, *res adjudicata*, and the Supreme Court should not interfere with its invested jurisdiction to decide a point not previously decided in a former opinion in the same case by the Supreme Court.

5. **CERTIORARI: Excess of Jurisdiction.** Although an inferior court may have jurisdiction of a case, if it, upon any point, exceeds its jurisdiction, the error may be reached by *certiorari,* there being no remedy by appeal or writ of error.

6. **CONTRACT OF REPURCHASE OF LAND: Tender of Deed: Time of Essence.** Under a contract declaring that in consideration of plaintiff purchasing "from us one-sixteenth interest" in certain real estate "we guarantee and promise to purchase it back from him October 6, 1890, if he so desires and requests, at the price he paid us for same, paying him back all the money he paid for same, with interest at ten per cent per annum from date of purchase," plaintiff cannot be denied judgment in his suit for the purchase money and interest if he did not on the 6th day of October, 1890, tender to the sellers a deed, if prior to that time he notified them of his intention to resell to them and requested them to repay him the money he had paid them, and afterwards, within a reasonable time and before there had been any change in the situation, he made a tender of a deed reconveying all the interest he had received from them. Time was not of such essence of the contract as required him to tender a deed on the exact day the sellers by the contract promised to repurchase.

## Certiorari.

WRIT AWARDED.

*R. F. Porter* for relator.

In the first trial of this case the circuit court sustained a demurrer to plaintiff's evidence, holding that the facts constituted no cause of action. The Supreme Court on appeal reversed this and directed the trial court to proceed to try the case in accordance with this opinion, which the lower court did. The court of appeals to which the case was sent on second appeal on substantially the same evidence in all respects, by a different construction of the same evidence held that the lower court erred in submitting the case to the jury and reversed the case without remanding. These decisions are in direct conflict. Curtis v. Sexton, 201 Mo. 217; Curtis v. Sexton, 142 Mo. App. 179. The

point on which the Court of Appeals reversed the case, namely, because a deed was not tendered or offered to be tendered on the exact date named in the contract, October 6, 1890, was directly raised on the former appeal to the Supreme Court and was *res adjudicata*. Gracy v. St. Louis, 221 Mo. 1. But regardless of whether it was directly raised in the former appeal it was concluded by the judgment on demurrer to the evidence. The one question before the Supreme Court was whether the court committed error in sustaining a demurrer to the evidence. This concluded all questions raised or which could have been raised to show to the contrary, and that question was *res adjudicata* on all subsequent proceedings on substantially the same evidence as here. Bealy v. Smith, 158 Mo. 515; May v. Crawford, 150 Mo. 524; Masterson v. Railroad 58 Mo. App. 572; Dunn v. Nicholson, 125 Mo. App. 725; Crecilius v. Bierman, 68 Mo. App. 34; Glover v. Hominy Co., 76 Mo. App. 103. And the Supreme Court having reversed the case holding that plaintiff's evidence entitled him to go to the jury and having directed the trial Court to proceed in accordance with that opinion, the Court of Appeals cannot overrule the Supeme Court and convict the trial court of error for obeying that direction and submitting the case on the same evidence. Viertel v. Viertel, 212 Mo. 575; Berkey v. Thompson, 126 Iowa 394; State v. Newkirk, 49 Mo. 472; Baker v. Railroad, 147 Mo. 152. The Court of Appeals held that on account of the fact that plaintiff did not tender a deed on the exact date mentioned in the contract, October 6, 1890, or offer to tender it on that date, he could not recover, holding time the essence of the contract. The Supreme Court on the other hand held that under the facts detailed in evidence the tender made on December 1 was sufficient and time was not the essence of the contract as to tender of deed, notice of his election having been given prior to October 6, 1890. The Supreme Court decision is evidently in

accord with the authorities and right on this proposition, and the Court of Appeals in error. Time was the essence only as to the notice. Bales v. Roberts, 189 Mo. 65; Scannell v. American Soda Fountain, 161 Mo. 621; In re Mason, Trustee, v. Payne, 47 Mo. 517; Lumaghi v. Abt, 126 Mo. App. 221; Pomeroy on Contracts (2 Ed.), 433, sec. 360; Hunt on Tender, secs. 12, 15; Irvin v. Bleaksley, 67 Pa. St. 24; Laird v. Smith, 44 N. Y. 618; Augsberg v. Meredith, 101 Ill. App. 639; Townsend v. Tufts, 95 Cal. 257; Smith's Appeal, 69 Pa. St. 481; Byres v. Denver, 13 Colo. 552. But regardless of whether the decision was right or wrong, it is the law of the case, and must govern all subsequent proceedings and the trial court and the Court of Appeals are bound by it and the court will not allow the question of plaintiff's prima facie case to be again litigated on substantially the same record. Atty.-Gen. ex rel. v. Lum, 2 Wis. 507; Hayward v. Smith, 187 Mo. 475; Mowry v. Norman, 223 Mo. 463; Meriwether v. Publisher, 224 Mo. 624; Roth Tool Co. v. Spring Co., 146 Mo. App. 1; Haas v. Multigraph Co., 158 Mich. 508; Blades v. Railroad, 123 N. W. 1058; Jackson v. Railroad, 84 S. C. 296. The record of the Supreme Court was the proper source to secure the facts in evidence in the former trial and the opinion of the court not competent evidence to establish what the facts were in that case. Peltz v. Bollinger, 180 Mo. 252; Priddy v. Boice, 201 Mo. 339; Cullen v. Higgins, 138 Ill. App. 168; Drayton v. Nells, 1 Nott & McCord, 409; Hart v. Bank, 27 S. R. 926; Donellen v. Hardy, evidence and the Court of Appeals had no greater authority to have disregarded the opinion of the Supreme Court and dismissed plaintiff's case again on the same evidence and the court of appeals had no greater authority in this respect than the trial court. An appeal cannot confer upon the appellate court a jurisdiction which the court *a quo* did not possess. Baker v. Chrisholm, 3 Tex. 157; Abernathy v. Moore, 82 Mo. 65; State

ex rel. v. Smith, 188 Mo. 180. The Supreme Court having decided that plaintiff had a prima-facie case and having sent the case back to the trial court with instructions to retry the case in accordance with its opinion, this was binding on the trial court and the Court of Appeals on substantially the same record as here, and the Court of Appeals exceeded its jurisdiction and acted in excess of its authority and illegally in reversing the circuit court and holding the plaintiff had no cause of action on the same record that was before the Supreme Court and on which that court held plaintiff had a cause of action. That question was no longer open to either the trial court or the Court of Appeals. And the proper method to correct the error of the Court of Appeals is the issuance of its remedial writ by the Supreme Court under its supervisory control over inferior courts given by the Constitution and the writ should be maintained, the judgment of the Court of Appeals set aside and the judgment of the circuit court affirmed. Edgar v. Greer, 14 Iowa 211; Berkley v. Thompson, 126 Iowa 394; State ex rel. v. Smith, 176 Mo. 90; State ex rel. v. Smith, 188 Mo. 180; State ex rel. v. Bayha, 97 Mo. 331; State ex rel. v. Nortoni, 201 Mo. 1; State ex rel. v. Dawson, 99 Mo. 222; State ex rel. v. Basket, 164 Mo. 440; State ex rel. v. Railroad, 172 Mo. 446; State ex rel. v. Laughlin, 75 Mo. 358; State ex rel. v. Grimm, 220 Mo. 483; State ex rel. v. Foster, 225 Mo. 171; State ex rel. v. Woodson, 161 Mo. 444; State ex rel. v. Dearing, 173 Mo. 492; State ex rel. v. Smith, 177 Mo. 69; State ex rel. v. Williams, 221 Mo. 227; Thomas v. Mead, 36 Mo. 232. The trial court properly held that defendant had made no defense and having contracted as principal he was bound as such. Carr v. Card, 34 Mo. 513; State ex rel. v. Williams, 77 Mo. 468; Layson v. Cooper, 174 Mo. 220; Visitation Convent v. Kleinhoffer, 76 Mo. App. 661; Bank v. Wells, 98 Mo. App. 581. The cases of Curtis v. Sexton, 201 Mo. 217, and Curtis v. Sex-

ton, 142 Mo. App. 179, are in direct conflict, holding
directly the opposite on the same evidence and the
construction of the same documents. When the Su-
preme Court had passed on the question of whether
plaintiff had a case to go to the jury or not he had a
right to rely on that, and an inferior court should not
be allowed to hold otherwise on the same record. And
the Supreme Court through its remedial writ should
set aside the judgment of the Court of Appeals, and
as the record shows that no other judgment could be
rendered except that which was rendered in the lower
court, a judgment for plaintiff, and as this is the third
time the case has been to the Supreme Court, and it
has been tried twice in the circuit court, and once in the
Court of Appeals, and as is said in Gracy v. St. Louis,
supra, "There must be an end to a law suit," the
court should set aside the judgment of the Court of
Appeals and affirm the judgment of the trial court
or direct the Court of Appeals to do so; and we ask
that this be done. Gracy v. St. Louis, 221 Mo. 1; State
ex rel. v. Smith, 176 Mo. 90.

*A. F. Evans* for respondents.

(1) The Kansas City Court of Appeals had ju-
risdiction of the case and proceeded within its con-
stitutional authority. Constitution, sec. 6, art. 6; R.
S. 1909, sec. 2083; State ex rel. v. Smith, 173 Mo. 398;
Railroad v. Smith, 154 Mo. 300; State ex rel. v. Broad-
dus, 207 Mo. 107; State ex rel. v. Dobson, 135 Mo. 1;
State ex rel. v. Smith, 101 Mo. 174; State ex rel. v.
Baker, 170 Mo. 383; State ex rel. v. Smith, 107 Mo.
527; State ex rel. v. Rombauer, 125 Mo. 632; Bank v.
Woesten, 144 Mo. 407; Zellars v. Surety Co., 210 Mo.
86; Smith v. Railroad, 143 Mo. 33; Clark v. Railroad,
179 Mo. 66. (2) The alleged error which this court
is petitioned to correct by this writ, is that the opin-
ion rendered by the Kansas City Court of Appeals in

the case of Curtis v. Sexton, reported in 142 Mo. App. 179, on an appeal by the defendant from a judgment against him, at the second trial of the case, is in conflict with the opinion of this court rendered in that case, in October, 1906, and reported in 201 Mo. 217, on an appeal by plaintiff from a judgment sustaining a demurrer to his evidence at the first trial. Curtis v. Sexton, 142 Mo. App. 179. (3) The record before the Supreme Court on the first appeal is not, by any means, "substantially the same" as the record before the Court of Appeals on the second appeal. They are essentially different records. (4) The case was not tried, at the second trial, even by counsel for plaintiff, on the theory that this court had adjudged that plaintiff by his alleged letters to Bracking, or to defendant, dated in September, 1890, accepted the offer to repurchase the land, or that said letters were notice of such acceptance. The trial court did not hold any such theory and the case was not tried or submitted in the trial court on any such theory. (5) Defendant had the right to present for the consideration of the court and the court had the right and duty to consider and decide, on the second appeal, all questions which were not fairly presented to the court and directly considered and decided on the former appeal. A party is not concluded upon any questions involved, or decided, by mere implication arising from the general disposition of the case. Baker v. Railroad, 147 Mo. 150; Overall v. Ellis, 38 Mo. 209; Kelly v. Thuey, 143 Mo. 422; Lampert v. Laclede Gas Light Co., 14 Mo. App. 376; Keith v. Keith, 80 Mo. 125, Wire Co. v. Hardware Co., 97 Mo. 293; Carson-Rand Co. v. Stern, 129 Mo. 381; Ehrhardt v. Robertson, 78 Mo. App. 404; Mill & Lumber Co. v. Sims, 101 Mo. App. 569; Amusement Co. v. Amusement Co., 192 Mo. 404; Walser v. Garham, 60 Mo. App. 323; Boone v. Shackleford, 66 Mo. 493; Hamilton v. Marks, 63 Mo. 167;

Francis v. Blair, 89 Mo. 291; Sprague v. Rooney, 82 Mo. 493; Hayne v. Trenton, 123 Mo. 326.

BROWN, J.—This is a proceeding by *certiorari* in this court to quash a judgment entered by respondents as judges of the Kansas City Court of Appeals.

In effect it is a continuation of a suit instituted in the circuit court of Jackson county, wherein the relator as plaintiff brought suit against one Samuel E. Sexton, as defendant, to enforce a contract to repurchase certain real estate located in Kansas City, Missouri. The first trial was had on January 29, 1903, when the circuit court sustained a demurrer to the plaintiff's evidence, whereupon the plaintiff, Curtis, appealed to this court. The appeal was heard by us at our October Term, 1906, and a decision rendered, reversing the judgment of the trial court—which decision is found in 201 Mo. 217.

This cause being remanded for a new trial, the same was, on May 12, 1908, submitted to a jury in the circuit court of Jackson county, which jury returned a verdict for plaintiff Curtis. From a judgment on said verdict, defendant Sexton appealed to this court. By an order of this court said appeal was transferred to the Kansas City Court of Appeals; and upon a hearing of said appeal in that court, the judgment of the circuit court was on January 24, 1910, reversed, on the alleged ground that plaintiff Curtis had failed to establish a cause of action against defendant Sexton. [142 Mo. App. 179.]

After unsuccessful motions on the part of plaintiff, Curtis, to secure a rehearing in said Kansas City Court of Appeals, and to transfer the appeal to this court, he instituted this action to quash the judgment of said Court of Appeals, for the alleged reason that it is in conflict with the former decision of this court in the same case, wherein we held that said plaintiff Curtis had by his evidence made out a prima-facie

case against the defendant, and was entitled to go to the jury.

This action was heard by us at our last April term and an opinion filed by FERRISS, J., but as said opinion was not concurred in by a majority of this court, the case was reassigned to the writer.

The issues herein present several important questions of law. First, it is contended by respondents that this court has no power by *certiorari* to review or correct a final judgment or decision of the Kansas City Court of Appeals because such decision is in conflict with a prior controlling decision of this court. Second, that the decision of the Kansas City Court of Appeals in this case is not in conflict with the prior decision of this court, because the evidence in the second trial was wholly different from the evidence before this court upon the first appeal.

Relator contends that the judgment and decision of the Kansas City Court of Appeals, which he seeks to quash, is not only in conflict with prior controlling decisions of this court, but is contrary to the law of the case, as announced by this court when the action was previously before us.

A careful reading of the former decision of this court and the decision of the Kansas City Court of Appeals herein, lends some plausibility to respondents' contention that the decision of the Court of Appeals is not in conflict with our decision. But relator contends that the evidence on the part of the plaintiff given at the first trial and which we held to constitute a prima-facie case for plaintiff, is substantially the same as the evidence upon the second trial; and the relator in his motion for a rehearing in the Kansas City Court of Appeals, filed with the respondents a printed copy of the evidence as presented to this court upon the first appeal, and asked the Court of Appeals to examine the record of the former trial and determine whether or not the evidence on the part of

the plaintiff was the same as upon the second trial; and whether or not the judgment of the Supreme Court was *res adjudicata* upon the Court of Appeals; but respondents refused to examine the abstract of the record of the first trial and thereby determine whether or not the facts proven by plaintiff were substantially the same at both trials, but contented themselves with an examination of our opinion wherein the facts of the case were stated in an abbreviated form, and held that the plaintiff's evidence upon the second trial was different in a substantial manner from that given at the first trial.

We have carefully examined the record upon which the decision of the Kansas City Court of Appeals is based, and compared it with the record which was before us on the former appeal, and find that the evidence on the part of the plaintiff in both trials was substantially the same, so far as such evidence tends to make out a case against the defendant Sexton.

## OPINION.

At the threshold of this case, our jurisdiction to grant the relief prayed for by relator is challenged. One vital issue which confronts us is, have we the power to correct an error in the final decision of a Court of Appeals unless that court invites us to review its conclusions of law under the provisions of section 6 of the amendment to article 6 of our State Constitution?

Section 8 of the constitutional amendment of 1884 provides: "The Supreme Court shall have superintending control over the courts of appeals by *mandamus,* prohibition and *certiorari.*"

Section 3, article 6 of the Constitution of 1875, provides: "The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of *habeas corpus, man-*

*damus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same.''

Under these constitutional provisions the Supreme Court is the final repository of judicial power. Designedly and wisely, there is found in these provisions no attempt to define or limit the superintending control which the people have seen fit, through their Constitution, to delegate to the Supreme Court, save only to indicate the instrumentalities or writs through which this control may be exercised. In harmony with the idea of ultimate judicial power in the Supreme Court, section 6 of the amendment of 1884 requires the Courts of Appeals to decide questions in conformity to the previous decisions of the Supreme Court. This to the end that the law throughout the State may be certain and uniform. Section 6 points out the method by which a Court of Appeals may transfer a cause to the Supreme Court, and in such cases requires this court to ''rehear and determine said cause.'' The provisions of this section do not, however, in any degree deprive this court of the superintending control given by the Constitution, and which it is the duty of this court to exercise whenever in its judgment the occasion demands it.

A power to supervise presupposes that the tribunal which is to do the supervising may act on its own initiative. If we could only exercise our right to correct errors and judgments of appellate courts when such courts voluntarily invite us to do so, then every appellate court in the State could constitute itself a Supreme Court and refuse to follow our decisions whenever it might see fit to do so. Under such a condition of affairs, statutes and other laws would mean one thing in one part of the State and something quite different in another appellate district of the same Commonwealth; and this court would be supreme in name only.

We have always felt and still feel that the distinguished jurists who preside over the several Courts of Appeals will not intentionally disregard their plain duty under the Constitution to follow the last previous rulings of this court on all questions of law and equity which may arise in said appellate courts, and that should the time ever come when an appellate court of any district shall undertake to nullify the rulings of this court, the electorate of such district can be depended upon to remedy the evil. Yet we in no sense abdicate our right and power to see that the laws are administered throughout the State in an uniform manner through the medium of original writs when we deem their issuance appropriate and necessary.

In his opinion herein, Judge FERRISS says:

"Our former decisions show that we have not been inclined to interfere with the Courts of Appeals in the performance of the duties which the Constitution has entrusted to them; nor are we disposed to encourage attempts to induce us to review their rulings through the medium of extraordinary writs. . . . The Constitution requires the Courts of Appeals, and each of them, to conform their decisions to ours; yet we have conceded to a Court of Appeals, in some cases where the matter was presented by litigants, the right to decide, upon its own responsibility whether its decision was in conflict with prior decisions of this court. [State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 207 Mo. 107; Railroad v. Smith, 154 Mo. 300.]"

In his said separate opinion herein, Judge FERRISS correctly announces the law of this case in the following language:

"Said section 6 of the Amendment of 1884, in speaking of prior decisions of the Supreme Court, is obviously referring to prior decisions in other cases. It has never, so far as we are advised, been contended in this court that when this court has declared the law

upon a given state of facts, a court of appeals is at
liberty, upon the same facts, *in the same case,* if it
shall come before that court through subsequent pro-
ceedings, to refuse to follow the decision of this court.
A decision by this court upon a point presented in a
case becomes the law of the case upon that point. It
is in the nature of *res adjudicata* upon that question.
In further proceedings in the same case before a Court
of Appeals, the prior decision of this court must be
followed, when the same point is presented upon the
same facts. If that court attempts to disregard the
decision of this court upon such point, it exceeds its
jurisdiction. When a court acts without jurisdiction,
or in excess of its jurisdiction, it is in error, and
the error may be reached by *certiorari.* This court
said in M., K. & T. Ry. v. Smith, 154 Mo. l. c. 308,
'Courts at all times are under the imperative duty
first to inquire into its authority to try a cause, and
then to keep within the proper limits of jurisdiction
prescribed by law.' Therefore, although a court may
have jurisdiction of a case, if it, upon any point, ex-
ceeds its jurisdiction, the error may be reached by
*certiorari,* there being no remedy by appeal or writ
of error in such case. This court has many times de-
cided that a decision by the Supreme Court upon a
point becomes the law of the case upon that point, and
is controlling upon further proceedings in that case in
the lower court, and also that, with rare exceptions,
such decision will bind this court upon a second appeal
upon the same point. In the case of May v. Crawford,
150 Mo. l. c. 524, we said: 'This rule is necessary to
the orderly and decent administration of the law, for
it would destroy all respect for the law and make
judgments of courts of final resort mere mockeries
and travesties, if the trial court could be permitted
on a trial anew in that court to set aside, disregard or
disobey them.'

"Again, in the case of Gracey v. St. Louis, 221 Mo. l. c. 5, LAMM, J., speaking upon this question in behalf of the court, says: 'On a second appeal or writ of error on the same facts and pleadings, the appellate court will not notice questions determined in the previous decision. All such are *res adjudicata* and closed. For the practical administration of justice, the former decision is the law of the case;' citing numerous cases. True, he says further, and properly: 'Like all general rules, the one in hand has its exceptions. Where manifest and far-reaching error has been committed, no castiron or immutable rule bars a re-examination of a question illy decided. In such case it goes without saying that this court, as a debt due to justice and as one of the foundation stones of its own dignity, reserves to itself the right to reconsider, re-examine and redetermine.'

"It will be perceived, however, that while this court reserves, as it must, the right to re-examine its former decision in the same case, upon the same state of facts, that right is not accorded to the lower court. If this court makes a mistake either as to the law or the facts of the case, as may happen, inasmuch as the court is composed of human judges, it has the power—fortunate that it is so—to correct that mistake by reversing itself on a second appeal; but it by no means follows that the trial court or the Court of Appeals has the same right in this regard. When a point, once decided by this court, comes before either the circuit court or the Court of Appeals on further proceedings in the same case, neither of the courts last named has jurisdiction to overrule this court. Here the question is different from that presented in the case of State ex rel. v. Smith, supra, where the superintending power of this court was invoked upon the Court of Appeals, because that court refused to follow a prior decision of this court in other cases. Here the question is as to the duty of that court to

follow the prior decision of this court in the same case. It becomes not a question of whether that court is right or wrong in its construction of the decision of this court, but whether that court is within its lawful jurisdiction if it disregards the law of the case as previously declared by this court. Upon the question here presented, in view of the fact that there is no way of bringing the point before this court by appeal or writ of error, we have no hesitation in holding it to be our duty, under the superintending control given this court by the Constitution, to review the action of the Court of Appeals by *certiorari.*"

The litigation between plaintiff Curtis and defendant Sexton is based upon the following contract:

> Kansas City, Mo., Jan. 5th, 1888.
>
> In consideration of W. Espy Curtis purchasing from us one-sixteenth interest in Madison Square, an addition to Kansas City, Mo., we guarantee and promise to purchase it back from him October 6th, 1890, if he so desires and requests, at the price he paid us for same, paying him back all the money he paid into and for same, with interest at the rate of 10 per cent per annum from date of purchase.
>
> Also in consideration of W. Espy Curtis purchasing from us the aforesaid one-sixteenth interest in Madison Square we guarantee to sell or trade Lots 1, 2, 3, 4, 5, 6 and 7 in Block (12) James Goodin Place, an addition to Kansas City, Mo., or else in case these lots are not sold or traded by April 20th, 1889, we promise and agree to carry the two-fifths interest in those lots belonging to W. Espy Curtis for him without interest, making the payments for him.
>
> We also agree not to charge said W. Espy Curtis any commission for selling or trading the above mentioned property.
>
> In witness thereof we have placed our hands and seal.
>
> SEXTON & BRACKING. (Seal).

A casual reading of the foregoing contract demonstrates that it was entered into to evidence two facts: First, that plaintiff Curtis had purchased certain real estate from the partnership of Sexton & Bracking; and, second, that said said Sexton & Bracking, in consideration of said purchase, agreed to indemnify said

Curtis against loss through his investment by repurchasing said property from Curtis on October 6, 1890, ''if he so desires and requests'' by repaying to him the purchase money, with interest at ten per cent per annum thereon. This contract gave Curtis a right to retain the land if on October 6, 1890, he deemed it to his interest to do so; otherwise, he had the right to treat the purchase money as a loan, and demand its repayment upon the surrender of such title as he had received from Sexton & Bracking.

This contract, while containing a certain option feature, is wholly unlike an unilateral option to purchase real estate whereby the owner of such real estate for a nominal sum obligates himself to hold such real estate and convey the same to a vendee at a future date upon payment of the purchase price. It partakes more of the nature of a loan wherein it became the duty of plaintiff Curtis, within a reasonable time after October 6, 1890, to elect whether he would retain the property or treat his investment as a loan secured by note.

The plaintiff Curtis resides in Cincinnati, Ohio, and the defendant Sexton resides in Kansas City, Missouri. The evidence on the part of the plaintiff upon the first trial shows that on September 13, 1890, plaintiff Curtis sent to defendant Sexton at the latter's address in Kansas City, a letter (postage prepaid), as follows:

9—13—'90.

Samuel E. Sexton:

> Shall have to let my int. in Mad. Sqr. go as per agreement with you and Frank. Oct. 6, 1890, is the date named in agreement for my decision but I now give you notice that on that day I shall be ready to receive the cash and turn my interest over to you and Frank or to whom you may order. You can get figures off your books.          W. ESPY CURTIS.

That on September 20, 1890, plaintiff also sent by registered mail to defendant Sexton at the latter's

address in Kansas City, Missouri, the following letter:

Sam'l E. Sexton:
  Not yet rec'd answer. Shall act on the written agreement between you and Frank and myself concerning Mad. Sq. Oct. 6-90. All money . . . for it and 10 per cent per an. I shall be ready to transfer title to you and receive the cash on Oct. 6-90.                                    W. ESPY CURTIS.

The registry return receipt shows that this letter was delivered to S. E. Sexton at Kansas City on September 23, 1890. The evidence proves in a satisfactory manner that the defendant's name was signed to the return registry receipt by defendant's wife.

That on September 30, 1890 plaintiff Curtis sent a third letter to defendant Sexton, postage prepaid, asking defendant to prepare and forward through an express company or bank such deed as he desired for a reconveyance of the property, such deed to be executed by Curtis upon payment of $3061.61.

That no answer being received to any of these letters, plaintiff Curtis went to Kansas City on November 20, 1890, and called on defendant Sexton, who claimed he could not repurchase the property for lack of funds. Curtis claims to have seen in defendant's possession during this interview two of the letters he had written to defendant, electing to resell the property to him and Bracking. On December 1, 1890, plaintiff Curtis tendered to defendant a deed reconveying to defendant and his former partner Bracking the interest he had purchased of them in the Kansas City real estate and demanded a return of the purchase money paid for the property, with ten per cent per annum interest thereon. Said deed was rejected and repayment of the purchase money refused. This evidence was before us in the former appeal, and on that evidence we held that "before and on October 6, 1890, plaintiff asked defendant to prepare such a

deed as he desired, and offered to execute it, and defendant declined to do so.'' We further held in effect that the plaintiff, by the foregoing evidence had made out a prima-facie case entitling him to a judgment for the purchase money he had paid to Sexton & Bracking for the Kansas City real estate and that the trial court erred in sustaining a demurrer to plaintiff's evidence; and we therefore reversed the judgment and remanded the case.

Upon a retrial of the cause we find that the plaintiff introduced substantially the same evidence as upon the first trial, whereupon the trial court submitted the case to the jury, who returned a verdict in favor of the plaintiff; but the respondents, upon appeal to the Kansas City Court of Appeals, held that this evidence shows that plaintiff has no cause of action; and therefore reversed the judgment of the circuit court without remanding the cause.

From reading the decision filed by respondents as judges of the Kansas City Court of Appeals, we find that they, in the main, base their conclusions upon the fact that the plaintiff Curtis did not on the 6th day of October, 1890, elect to resell the property to defendant and tender a deed of reconveyance on that day.

While a literal construction of our former decision might lead to the conclusion that upon a former trial there was evidence that plaintiff did elect to resell the property to defendant on the 6th day of October, 1890, that statement was a mere inadvertence of this court, or rather a statement of the legal effect of the plaintiff's acts in electing to resell the property to defendant a few days before the 6th day of October, 1890; and it was not our intention to specifically say that the election was made on the 6th day of October. Our decision was that the election to resell to defendant made a few days before the 6th of October, 1890, was

238 Sup.—14

the same in legal effect as if it had been made on that day.

Without taking the pains to read the record of the former trial, the respondents were misled in construing our former decision to mean that an election to resell to defendant and the tendering of a deed to defendant was necessary on the 6th day of October, in order to entitle plaintiff to recover. Such is not the law of this case.

This brings us to a consideration of whether or not it was the duty of respondents to read the evidence given by the plaintiff upon the former trial, and determine whether the matter of the election of the plaintiff to resell the property to defendant was *res adjudicata* in this suit.

We are not aware of any written law which authorized the filing in the Kansas City Court of Appeals by plaintiff Curtis of the printed abstract of the record of the first trial, which abstract was before us on the first appeal, and formed the basis of our former decision in this cause. Yet we see no reason why respondents should have refused to examine the record of the first trial. By Rule 15 of the Kansas City Court of Appeals, respondents permit any reputable attorney authorized to practice before them, in lieu of a complete transcript of the record of the trial court, to file a printed abstract of the record showing such facts as are necessary to a full understanding of the questions presented to them for adjudication, which printed abstract need only be verified by the signature and professional integrity of the attorney who files same; and where such abstract of the record of a trial had in another appellate court is so certified and vouched for, as was done in this case, we are unable to see any substantial reason for refusing to examine same, particularly where the accuracy of such abstract is not challenged by opposing counsel. If it were so challenged by opposing counsel, respondents

could have sent for the original bill of exceptions filed in the first appeal, to verify the accuracy of said abstract.

There is no law specifically requiring appellate courts to examine the record in a former appeal in order to ascertain whether the issues decided in such former appeal are *res adjudicata* upon a second appeal; but owing to the fact that the statement of the evidence and pleadings in the opinions of all appellate courts is necessarily very much abbreviated in order to bring such opinions in reasonable bounds, the only safe method of determining whether or not an issue was determined upon a former appeal is to examine the record of such former appeal. [Hart v. Bank, 27 So. (Miss.) 926.]

The Kansas City Court of Appeals is in certain classes of cases a court of last resort, and courts of last resort not only have the power, but it is their duty, to ascertain in every legitimate way the real truth of every matter submitted to them for adjudication.

There is not one word of constitutional or statute law which authorizes an appellate court in an original proceeding pending before it to appoint a special commissioner to take testimony and certify and file same in the court appointing him; but it being necessary to promote the ends of justice that such testimony be so taken and certified, appellate courts, proceeding upon their inherent power, do not hesitate to appoint a commissioner to obtain such evidence as is necessary to enable such appellate courts to properly determine and adjudicate such issues as are tendered in such original proceeding.

On account of the irreparable consequence of erroneous judgments of appellate courts, they not only have the power, but it is their duty, to carefully examine all legal evidence submitted to them before an-

nouncing their decision thereon; and we therefore hold
that when the attorney of plaintiff Curtis filed with
respondents the printed abstract of the record of the
first trial, it was their duty to read same and thereby
determine whether or not the issues presented upon
the second appeal had been settled and determined
upon the same facts in the former appeal to this court.

Going back to the merits of the case of Curtis v.
Sexton, we observe that the respondents in their opin-
ion have laid great stress upon the proposition that
time was of the essence of the contract to repurchase
the property, holding that the plaintiff cannot recover
the money which he paid to defendant unless he ten-
dered a deed to defendant on October 6, 1890. This is
a misconstruction of the law of the case, as announced
in our former opinion. There is not one word in the
contract requiring Curtis to tender a deed of recon-
veyance on October 6, 1890. At most, it only required
him to notify defendant of his desire to resell said
property on that day; and the law, looking at the
substance rather than the form of things, holds that
if a notice was given of plaintiff's desire to resell
said property to defendants a few days before Octo-
ber 6, 1890, and not subsequently withdrawn, that no-
tice was a sufficient compliance with the contract, when
followed up, as it was, by a formal offer to reconvey
within a reasonable time, regard being had to the sit-
uation of the parties.

When plaintiff Curtis purchased the real estate,
there was an outstanding deed of trust on same to
secure a large sum of money, so that plaintiff only
purchased an equity in the property. The property
was advertised under this deed of trust on December
4, 1890, and subsequently sold. This deed of trust had
been placed on the property by defendant Sexton and
others; but its existence has no bearing upon Sexton's
liability on the contract sued on.

It will be observed that on December 1, 1890, plaintiff Curtis went to Kansas City, Missouri, and actually tendered a deed of reconveyance to defendant Sexton, and again demanded the repayment of the money he had paid on the land. This was three days before the land was advertised for sale under the deed of trust, so that so far as the facts disclosed by the record show, there was no excuse for Sexton to refuse to accept the deed and repay Curtis the money he had invested.

If plaintiff had sold the interest in the real estate which he purchased of Sexton & Bracking, or had allowed the same to become encumbered by judgments or other similar liens, this would have afforded a valid excuse for defendant to refuse to repurchase said interest; but no such defense is pleaded or mentioned in the evidence. Plaintiff tendered a proper deed to defendants before the property was advertised for sale under the deed of trust above mentioned; so that there was no such change in the situation of the parties or the title of the property between October 6th, 1890, and the date of tendering the deed as warranted the respondent in holding that time was of the essence of the contract. [Hunt on Tender, sec. 282; Lawrence v. Miller, 86 N. Y. l. c. 137.]

All payments made by the plaintiff Curtis on the real estate were in checks payable to the order of Sexton & Bracking, and passed through the hands of defendant Sexton, except the last payment, which amounted to $415.20, which last payment was received by Bracking. This payment, however, was repaid to Curtis by Bracking and as it does not form any part of the judgment recovered by plaintiff, the defendant Sexton has no cause to complain that it was not made to him.

Defendant Sexton's resourceful attorney contends that an inspection of the record shows that the evi-

dence at the second trial was not the same as upon the first trial. That at the first trial, several letters from plaintiff Curtis to Bracking and from Bracking to Curtis were introduced, which letters were not offered at the second trial; and that at the second trial, both defendant Sexton and his former partner Bracking gave evidence, while neither of them were sworn at the first trial; hence our former decision in this case was not in any respect *res adjudicata* upon respondents as judges of the Kansas City Court of Appeals in reviewing the evidence upon the second trial.

This contention must be overruled, for while it is true defendant did testify upon the second trial and not upon the first and that his evidence is to the effect that he never received any letters from plaintiff before October 6, 1890, asking him to repurchase the property, the evidence of plaintiff in respect to his election to resell the property to defendant was the same upon the second trial as upon the first so far as it related directly to defendant Sexton. It was for the jury to pass upon the probative force of such evidence. One prominent fact looms up in the record of the last trial of this case, to-wit, that between January 5, 1888, when plaintiff Curtis purchased the real estate of defendant Sexton and his partner, and the 6th day of October, 1890, the property had very greatly depreciated in value and was not worth as much as the encumbrance which Sexton and others had placed thereon before the sale to plaintiff. It was evidently just such a contingency which the plaintiff and defendant had in mind when the contract of repurchase was entered into. The contract is plain and unambiguous. It was sufficient to enable defendant and his partner Bracking to obtain plaintiff's money; and being intended to indemnify him against loss by the in-

vestment of such money, it should be so construed by the courts as to produce that result.

It follows that the judgment entered by respondents as the judges of the Kansas City Court of Appeals in the case of Curtis v. Sexton should be quashed and held for naught, to the end that respondents as such judges may recall their mandate, if one has issued on the judgment so quashed, and retry said cause upon the appeal filed with them, and determine the issues therein in conformity with the law as announced herein and in our former opinion in said cause. It is so ordered. *Valliant, C. J.*, and *Graves* and *Kennish, JJ.*, concur. *Woodson, J.*, dissents in separate opinion; *Ferriss, J.*, dissents in separate opinion in which *Lamm, J.*, concurs.

## DISSENTING OPINION.

FERRISS, J.—Relator sued out of this court, at the October Term, 1910, a writ of *certiorari* directed to respondents, Judges of the Kansas City Court of Appeals. The writ was made returnable January 20, 1911.

The facts which led up to this proceeding are substantially as follows:

On October 4, 1900, relator sued one Samuel E. Sexton in the circuit court of Jackson county, charging in his petition that on January 5, 1888, and prior and subsequent thereto, including all of the year 1890, defendant (Sexton) and one Frank Bracking were partners engaged in the real estate and loan business in Kansas City under the firm name of Sexton & Bracking, and as such partners owned an interest in a tract of land known as Madison Square, in Kansas City, Missouri; that on said January 5, 1888, plaintiff entered into a written contract with the said firm of Sexton & Bracking to purchase a one-sixteenth inter-

est in said Madison Square (setting out such contract in detail); that such contract provided that it was made subject to a contract of the same date between the same parties; that on the same date, in order to induce plaintiff to make such purchase, and as a part of the same transaction, said firm of Sexton & Bracking entered into a written contract with the plaintiff, as follows:

Kansas City, Mo., Jan. 5th, 1888.

In consideration of W. Espy Curtis purchasing from us one-sixteenth interest in Madison Square, an addition to Kansas City, Missouri, we guarantee and promise to purchase it back from him October 6, 1890, if he so desires and requests, at the price he paid us for same, paying him back all the money he paid into and for the same, with interest at the rate of 10 per cent per annum from date of purchase.

Also, in consideration of W. Espy Curtis purchasing from us the aforesaid one-sixteenth interest in Madison Square, we guarantee to sell or trade lots 1, 2, 3, 4, 5, 6 and 7, in Block (12), James Goodin Place, an addition to Kansas City, Missouri, or else in case these lots are not sold or traded by April 20, 1889, we promise and agree to carry the two-fifths interest in those lots belonging to W. Espy Curtis for him without interest, making the payment for him.

We also agree not to charge said W. Espy Curtis any commission for selling or trading the above mentioned property.

In witness whereof, we have placed our hands and seal.
SEXTON & BRACKING. (Seal).

The plaintiff in his said petition further stated that he had performed his part of said contracts in all respects; that prior to October 6, 1890, he notified Sexton & Bracking, and each of them, that he desired them to purchase said property back from him, in accordance with said contract, on October 6, 1890, and requested them to forward him such form of deed which they desired him to execute to them for said property, but that they neglected and refused to forward such form of deed, and informed plaintiff that they would not purchase said property back from him; that on October 6, 1890, and at different times thereafter,

plaintiff informed said firm that he desired them to purchase said property back from him at the price he paid, in accordance with their contract, but that they refused to purchase same back, and refused to pay plaintiff any of the money which he had paid for said land; that thereafter, on or about November 29, 1890; plaintiff executed to said Sexton & Bracking a deed to said property, and tendered it to the defendant, one of said partners, and demanded of defendant the amount of money plaintiff had paid for said property, with interest to October 6, 1890; that he made the same demand of and tender to Bracking; that both said parties refused to accept the deed and pay back the money which he had paid for the property, or any part thereof. With further allegations in the petition with regard to payments which had been made, is a statement that the property was sold under a deed of trust securing a prior incumbrance which carried with it all of the title and interest which had been conveyed to plaintiff as aforesaid. Plaintiff alleged that by reason of the premises he had been damaged in the sum of $2878.37, the aggregate of the payments made by him, with interest from October 6, 1890, and an additional sum of $149.81, paid for taxes, for which amounts he prayed judgment.

To this petition the defendant filed an amended answer, setting up, first, the Statute of Limitations; second, a general denial; third, that the contract of January 5 was a personal contract with Bracking, in which the defendant had no interest, and that he, the defendant, had complied with all his obligations.

The cause coming on for trial at Kansas City in January, 1903, plaintiff introduced his evidence, and at the close thereof a demurrer to the same was sustained by the court, whereupon plaintiff took a nonsuit with leave to move to set the same aside. The motion to set aside being overruled, plaintiff perfected his ap-

peal to this court, and on February 27, 1907, we reversed the judgment and remanded the cause, holding that the court below erred in sustaining the demurrer to the evidence.

The evidence given at the trial in the circuit court, and preserved in the record subsequently filed here, shows that no offer to resell, or tender of deed, was made by plaintiff on October 6, 1890. Our published opinion in that appeal states the fact to be that plaintiff, *on* October 6, notified the defendant of his desire to resell. The opinion is published in 201 Mo. 217. It says on page 229: "Before *and on* October 6, 1890, plaintiff asked defendant to prepare such a deed as he desired and offered to execute it;" and on page 226: "Plaintiff had previous to that date and *on that date* notified them that he desired them to so repurchase, and requested them to do so."

On May 11, 1908, the said cause came up again for hearing in the circuit court on substantially the same pleadings as before. That was had before a jury, the evidence being substantially the same as that given at the first trial, and resulted in a verdict for plaintiff for $4543.75, for which amount judgment was entered against the defendant. From this judgment defendant appealed to this court. Pending such appeal the Legislature enlarged the jurisdiction of the Courts of Appeals to $7500, and, upon proper proceedings, the cause was transferred by this court to the Kansas City Court of Appeals. On January 24, 1910, the case having been argued in the Kansas City Court of Appeals, that court rendered its decision and judgment, holding that time was of the essence of the contract, and that plaintiff could not recover without showing that he had tendered a deed or offered to convey the property to defendant on October 6, 1890, reversing the case without remanding. In due time the plaintiff (relator) filed this motion for rehearing in the Court of Appeals:

"1.   The decision of the court is in conflict with a controlling decision of the Supreme Court in this same case, reported in 201 Mo. 217.

"2.   This court has overlooked or misconceived the decision of the Supreme Court above referred to, especially the binding force and effect thereof on this court.

"3.   This court is in error in holding that the Supreme Court, in the same case above referred to, did not consider and decide 'the matter of election of plaintiff to sell back, and his tender of deed.'

"4.   This court has misconceived the law of this case, in this:   (1) In holding that time is of the essence of the contract to be performed by the parties thereto; (2) in holding that plaintiff should have tendered a deed October 6, 1890; (3) in holding that plaintiff had failed to perform his part of the contract; (4) in holding that Bracking's letter of September 26, 1890, was not a waiver as to the time of tender; (5) in holding that plaintiff accompanied his notice by a demand, as a condition to making a deed, for more than was due him, and thereby deprived himself of a right to recover; (6) in holding that the evidence did not entitle plaintiff to go to the jury."

The motion for a rehearing was overruled, the court stating that the opinion theretofore reached by it was based principally on the ground that plaintiff's option to sell was not exercised on October 6, 1890, the day named in the contract, and that no tender of a deed was made by him on that date; that in the record before the Court of Appeals there was no proof of any tender on October 6, 1890; that in this respect the evidence before the Supreme Court was altogether different; that the evidence presented to the Supreme Court disclosed that the plaintiff did exercise his option, and make his request on the date named in the contract; that the court could not enter into a controversy between the parties as to whether the evidence

before the Supreme Court and the evidence before the Court of Appeals was substantially the same; that the Court of Appeals took the evidence at the first trial to be as the Supreme Court stated it in its opinion, and that undoubtedly it was upon that statement of the evidence that the Supreme Court formed its conclusion and pronounced judgment.

When the relator filed his motion for rehearing in the Court of Appeals, as above stated, he also filed with that court a copy of the abstract of the record which had been filed in this court when the case was here upon the first appeal, and requested the Court of Appeals to examine same in order to determine whether the record was substantially the same in the two appeals. The decision of the Kansas City Court of Appeals, on the second appeal, together with the court's ruling on the motion for rehearing, will be found in 142 Mo. App. 179.

Relator sued out this writ, charging in his petition the making of the contract above set out; the fact that the circuit court, at the first trial, nonsuited the plaintiff; that the Supreme Court reversed the judgment and remanded the cause; that there was no substantial change in the pleadings. The petition then sets out the fact of the second trial in the circuit court and the judgment for the relator, and the appeal to this court; the transfer to the Court of Appeals, and the action of that court in reversing the case and holding that the plaintiff (relator) had no cause of action; sets out the opinion of the Court of Appeals, the motion for rehearing and the ruling of the Court of Appeals thereon, and then sets out the substance of the evidence on the matter of plaintiff's election to sell back and his tender of deed, on the first trial, as found in the abstract of the record on the appeal to the Supreme Court. Relator then sets out the evidence on the same point on the second appeal, as shown by the record of the case in the Court of Appeals, by which

showing it appears that the facts on that point were substantially the same in both records.

Relator charges that upon the question of the compliance by plaintiff with the terms of the contract, by tender of deed and demand of his money, the evidence in both records is the same. In other words, that the decision of the Court of Appeals was based upon the same evidence as was before this court when we held that the evidence made out a prima-facie case for the plaintiff. Relator states further in his petition herein that in neither record is any claim made that plaintiff took any action on October 6, 1890, either by notifying the defendant on that date, or by tendering a deed on that date.

Relator charges, in substance, that upon the same proof and substantially the same record the Supreme Court held on the first appeal that plaintiff had a cause of action, while the Court of Appeals, on the second appeal, held that he had no cause of action; and further charges that he filed with his brief on the motion for rehearing in the Court of Appeals a copy of the record of the case in the Supreme Court, and that the Court of Appeals refused to examine the same.

Relator claims that his rights must be determined upon the record itself which was before the Supreme Court, and not upon the statement of facts contained in the opinion; that the law of the case, as declared by this court on the first appeal, is *res adjudicata* on this question and binding upon the Court of Appeals, and that in passing judgment upon the same question contrary to the opinion heretofore expressed by this court, the Court of Appeals acted in excess of its jurisdiction; that an inspection of the records before the two courts shows that the evidence introduced by plaintiff upon the question of tender of deed and notification by plaintiff to defendant was substantially the same in both cases.

· For their return to the writ, the respondents set out the record of the proceedings in that court, including the opinion of the court both in the main case and on the motion for rehearing.

The Court of Appeals in its ruling on the motion for rehearing refers to the language used by this court in our published opinion, and says that it shows that on a point which that court considered vital to the case, namely, whether an offer to resell and tender were made on October 6, the facts before the Supreme Court were essentially different from the facts in the record before that court, and that as the judgment of the Supreme Court was based upon the evidence as the court stated it, there was no conflict between the rulings of the two courts.

Relator says in his brief: "The point upon which the Court of Appeals reversed the case, namely, because a deed was not tendered or offered to be tendered on the exact day named in the contract, October 6, 1890, was practically raised on the former appeal to the Supreme Court, and was *res adjudicata.*" He claims further that, regardless of whether it was practically raised on the former appeal, it was concluded by the judgment of this court rendered upon that appeal; that the Court of Appeals cannot overrule the Supreme Court on the same evidence; that the record in the Supreme Court was the proper source from which the Court of Appeals should secure the facts in evidence in the former trial, and that the opinion of the Supreme Court was not competent evidence to establish the facts in the case.

The respondents contend that the motion to quash the writ should be sustained because the Kansas City Court of Appeals had jurisdiction of the case, and whether its decision was right or wrong, its action cannot be reached by *certiorari*; that the evidence in the two records was not substantially the same; that in any event the law as declared by this court depends upon

the facts as stated by the court in the opinion, and that the Court of Appeals was justified in taking the statement of facts made by this court in its opinion as and for the facts upon which the court rendered judgment.

I.   Respondents contend that the writ should be quased on the ground that this court cannot by *certiorari* review the decision of the Court of Appeals in a case of which that court has jurisdiction.

Section 8 of the constitutional amendment of 1884 provides: ''The Supreme Court shall have superintending control over the Courts of Appeals by *mandamus*, prohibition and *certiorari*.''

Section 3, article 6, of the Constitution of 1875, provides: ''The Supreme Court shall have a general superintending control over all inferior courts.   It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same.''

Under these constitutional provisions the Supreme Court is the final repository of judicial power.   Designedly and wisely, there is found in these provisions no attempt to define or limit the superintending control which the people have seen fit, through their Constitution, to delegate to the Supreme Court, save only to indicate the instrumentalities or writs through which this control may be exercised.   In harmony with the idea of ultimate judicial power in the Supreme Court, section 6 of the amendment of 1884 requires the Court of Appeals to decide questions in conformity to the previous decisions of the Supreme Court.   This to the end that the law throughout the State may be certain and uniform.   Section 6 points out the method by which a Court of Appeals may transfer a cause to the Supreme Court, and in such case requires this court to ''rehear and determine said cause.''   The provisions of this section do not, however, in any degree deprive this court of the superintending control given by the

Constitution, and which it is the duty of this court to exercise whenever in its judgment the occasion demands it.

Our former decisions show that we have not been inclined to interfere with the Courts of Appeals in the performance of the duties which the Constitution has intrusted to them; nor are we disposed to encourage attempts to induce us to review their rulings through the medium of extraordinary writs. But that we have the power, in the exercise of our superintending control, to review their rulings in any case we can have no doubt. Nor can we doubt it to be our duty, under the Constitution, to exert this power whenever in our judgment justice demands its exercise.

The Constitution requires the Courts of Appeals, and each of them, to conform their decisions to ours; yet we have conceded to a Court of Appeals, in some cases where the matter was presented by litigants, the right to decide, upon its own responsibility, whether its dicision was in conflict with prior decisions of this court. [State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 207 Mo. 107; Railroad v. Smith, 154 Mo. 300.]

Said section 6 of the Amendment of 1884, in speaking of prior decisions of the Supreme Court, is obviously referring to prior decisions in other Cases. It has never, so far as we are advised, been contended in this court that when this court has declared the law upon a given state of facts, a Court of Appeals is at liberty, upon the same facts, *in the same case,* if it shall come before that court through subsequent proceedings, to refuse to follow the decision of this court. A decision by this court upon a point presented in a case becomes the law of the case upon that point. It is in the nature of *res adjudicata* upon that question. In further proceedings in the same case before a Court of Appeals, the prior decisions of this court must be followed, when the same point is pre-

sented upon the same facts. If that court attempts
to disregard the decision of this court, upon such
point it exceeds its jurisdiction.    When a court
acts without jurisdiction, or in excess of its jur-
isdiction, it is in error, and the error may be reached
by *certiorari*.       This court said in M., K. & T.
Ry. Co. v. Smith, supra: ''Courts at all times are
under the imperative duty first to inquire into
its authority to try a cause, and then to keep with-
in the proper limits of jurisdiction prescribed by law''
[l. c. 308].    Therefore, although a court may have
jurisdiction of a case, if it, upon any point, exceeds
its jurisdiction, the error may be reached by *certiorari,*
there being no remedy by appeal or writ of error in
such case.    This court has many times decided that
a decision by the Supreme Court upon a point becomes
the law of the case upon that point, and is controlling
upon further proceedings in that case in the lower
court, and also that, with rare exceptions, such decision
will bind this court upon a second appeal upon the
same point.    In the case of May v. Crawford, 150 Mo.
l. c. 524, we said: ''As hereinbefore pointed out, the
decision in this case on prior appeal was that the sum
of five thousand dollars, which the defendants agreed
to pay the plaintiffs in case of breach of the terms of
the contract, must be regarded as liquidated damages
and not as a penalty.    This being so, it became the
law of this case, and was not open to question in the
trial court.    The duty of that court was to obey it
without respect to its opinion of whether it was right
or wrong.    Whatever error there was in it could only
be corrected on appeal to this court.''    In the same
case this court cited, with approval, the following from
Wells on Res Adjudicata and Stare Decisis, sec. 613:
''A previous ruling by the appellate court upon a
point distinctly made may be only authority in other
cases, to be followed, or affirmed, or to be modified,

or overruled, according to its intrinsic merits, but in the case in which it is made it is more than authority; it is a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves.'' In commenting upon this rule we said: ''This rule is necessary to the orderly and decent administration of the law, for it would destroy all respect for the law, and make judgments of courts of final resort mere mockeries and travesties, if the trial court could be permitted on a trial anew in that court to set aside, disregard or disobey them.''

Again, in the case of Gracey v. St. Louis, 221 Mo. l. c. 5, LAMM, J., speaking upon this question in behalf of the court, says: ''On a second appeal or writ of error on the same facts and pleadings, the appellate court will not notice questions determined in the previous decision. All such are *res judicata* and closed. For the practical administration of justice, the former decision is the law of the case;'' citing numerous cases. True, he says further, and properly, ''Like all general rules, the one in hand has its exceptions. Where manifest and far-reaching error has been committed, no castiron or immutable rule bars a re-examination of a question illy decided. In such case it goes without saying that this court, as a debt due to justice and as one of the foundation stones of its own dignity, reserves to itself the right to reconsider, re-examine and redetermine.''

It will be perceived, however, that while this court reserves, as it must, the right to re-examine its former decision in the same case, upon the same state of facts, that right is not accorded to the lower court. If this court makes a mistake either as to the law or the facts of the case, as may happen, inasmuch as the court is composed of human judges, it has the power—fortunate that it is so—to correct that mistake by reversing itself on a second appeal; but it by no means follows that the trial court or the Court of Appeals

has the same right in this regard. When a point, once decided by this court, comes before either the circuit court or the Court of Appeals on further proceedings in the same case, neither of the courts last named has jurisdiction to overrule this court. Here the question is different from that presented in the case of State ex rel. v. Smith, supra, where the superintending power of this court was invoked upon the Court of Appeals, because that court refused to follow a prior decision of this court in other cases. Here the question is as to the duty of that court to follow the prior decision of this court in the same case. It becomes not a question of whether that court is right or wrong in its construction of the decision of this court, but whether that court is within its lawful jurisdiction if it disregards the law of the case as previously declared by this court. Upon the question here presented, in view of the fact that there is no way of bringing the point before this court by appeal or writ of error, we have no hesitation in holding it to be our duty, under the superintending control given this court by the Constitution, to review the action of the Court of Appeals by *certiorari*.

In view of the above considerations, we hold against the respondents on this contention, that this court has no power to review the action of the Court of Appeals by *certiorari*.

II. We come now to the controlling question in the case, that is whether, under the facts, the Court of Appeals has disregarded the decision of this court upon a point in judgment before both courts in the same case. In other words, is the judgment of the Court of Appeals on the question as to whether or not plaintiff made a case, based upon the facts which this court held in judgment upon the same proposition?

Relator contends that the records before the two courts on the two separate appeals were substantially

the same. In this statement he is correct. The record in each appeal shows that no tender and no offer or request was made on October 6. The Court of Appeals held that upon such showing the plaintiff had made no case. In our opinion, based upon the same record, we stated the fact to be that on October 6 plaintiff notified defendant of his desire to resell, and requested him to prepare a deed. If our decision is to be regarded as applying to the facts in the record, the decisions are in conflict. If our decision applies to the facts as stated in our opinion, there is no necessary conflict.

On the motion for rehearing in the Court of Appeals relator placed before that court an abstract of the record in the Supreme Court, and called the attention of that court to the fact that the two records upon the proposition involved were substantially alike, and complains now that the court refused to look into that record to ascertain what facts were before this court upon the first appeal. Had the opinion of this court not shown the facts on which it was based, it would be fair to assume that our decision was based upon the facts contained in the record, and there would be a great deal of force in the contention of relator that the Court of Appeals, having before it both records, should have examined the record which had been filed in this court to ascertain whether the facts were the same; but whether the statement of facts made by this court in its opinion was correct or not, there can be no doubt that our decision was properly regarded by the Court of Appeals as applying to the facts stated in the opinion.

Relator attempts with great skill and industry to show that his cause of action did not depend upon an offer and tender of a deed being made on October 6, 1890, and contends that this court so decided. Ought we to now say that our decision was independent of the question whether the plaintiff acted on October 6, and that it would have been the same had we not had

in mind the fact as we stated it in the opinion? We think not. It must be conceded that in stating the facts upon that point we inadvertently departed from the record, and unless it clearly appears that this court held in its decision that plaintiff had a cause of action, even if no tender and no offer were made on that date, it cannot be said that the decisions of the two courts are in conflict. From this point of view, it was immaterial whether or not the Court of Appeals examined the record which was before this court, because even if that court had examined the record, and had seen that the facts in the two records were alike, it still could properly have said that the judgment of the Supreme Court must be applied to the facts as stated in the opinion, and not to the facts as stated in the record. We can see no escape from this conclusion. The Court of Appeals could not say, and we cannot now say, that our decision was independent of the particular fact in question. It follows that the question considered by the Court of Appeals, viz.: What was the legal effect of the failure of plaintiff to make an offer and tender on October 6? was unembarrassed by any prior decision of this court on that question. As the facts are stated in our reported opinion, we did not pass upon the question as it was presented to the Court of Appeals. That court was, therefore, free to form and express its independent judgment, and whether that court was right or wrong in its conclusion it is not our prerogative to consider or determine.

It follows from the foregoing that the writ should be quashed.

The foregoing opinion was written under the original assignment of the case. As the conclusion reached did not meet the approval of the majority of the court, the case was reassigned to Brother Brown, who has written the opinion of the court. The present opinion is, therefore, filed as a dissenting opinion, in which

*Lamm, J.,* concurs. *Graves, J.,* concurs in the first paragraph of this opinion.

## DISSENTING OPINION.

WOODSON, J.—I am unable to concur with the opinion of the court in this case for the following reasons:

First.  Because it is in conflict with the well known judicial system of this State, and in express terms overrules some of the earlier decisions construing the Constitution governing that question, and by necessary implication overrules scores of others placing the same construction upon the Constitution as those do, which are in terms overruled.

That provision of the Constitution governing this matter is section 6 of the Amendment of the Constitution in the year 1884, found on page 101 of volume 1 of the Revised Statutes 1909.  That section reads as follows:

"When any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals, or of the Supreme Court, the said court of appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals."

In the case of State ex rel. v. Smith, 173 Mo. 398, the petition for the writ of *certiorari* alleged that the judgment of the Kansas City Court of Appeals was in

conflict with a number of decisions rendered by the
Supreme Court, and in violation of the constitutional
provision before quoted. This court in the considera-
tion of that question used this language: "The first
question with which we are confronted is as to whether
or not *certiorari* can be resorted to for the purpose of
having this court quash the judgment of the court of
appeals and remit the record to the circuit court with
instructions," etc. Continuing, we further said: "In
this case neither a writ of error nor an appeal would
lie, so that the judgment of the court of appeals is con-
clusive upon the relator unless the action of that court
can be reviewed by this proceeding, and, if erroneous,
corrected. *Certiorari* 'only brings up the record, and
can only reach errors or defects which appear on the
face of the record of the tribunal to which it is issued
and which are jurisdictional in their nature.' " It was
also stated in that case that the court of appeals had
failed to follow "the last controlling decision of the
Supreme Court of Missouri," in violation of the Con-
stitution of the State. In disposing of that question
we used this language: "Nor will the fact, even if
true, that the decision is in conflict with decisions of
the Supreme Court, and the court of appeals, or has
not followed the controlling decision of the Supreme
Court, or that it committed error in any other respect
in the absence of the want of, or in excess of, its juris-
diction, avail relator in this proceeding. It is not for
us to say, nor do we say, whether or not the court of
appeals was correct in its conclusions; but whether
right or wrong, the case is not before us for review.
If those courts can be compelled by writ of *certiorari,*
or otherwise, to send to this court the records in cases
in which they have delivered opinions for review upon
grounds such as are shown to exist in this proceeding,
it is difficult to conceive of a case in which they could
not be required to do so, and thus disregard the spirit
and intention of section 6, article 6, of the Constitution,

'supra, and the laws organizing these courts by which they are made the final arbiters in all cases that come before them of which they have jurisdiction, except as otherwise provided by said section 6, article 6, of the Constitution.''

In the case of M., K. & T. Ry. Co. v. Smith, 154 Mo. 300, the plaintiff, among other things, sought to prohibit the Kansas City Court of Appeals from transcending its constitutional power by undertaking to decide the case in disregard of and contrary to the last previous rulings of the Supreme Court. This court, in its opinion, after referring to section 6, article 6, and section 3, article 6, of the Constitution, declares the law as follows: ''While the virtue of that constitutional provision is to be commended, and its mandatory direction should be obeyed by the Court of Appeals under all circumstances, still this court by constitutional limitations and restrictions, not less binding upon it than those upon the Courts of Appeals, can assert its jurisdiction over cases properly in that Court of Appeals for determination in the first instance, only as provided by section 6 of the Amendment of the Constitution of Missouri adopted in 1884, establishing that court and defining its jurisdiction, when 'one of the judges therein sitting shall deem any judgment rendered by that court contrary to any previous decision of any one of the said Courts of Appeals of the State, or of the Supreme Court,' that court must, of its own motion, pending the same term and not afterwards, certify and transfer said cause or proceeding and the original transcript therein, to the Supreme Court, and thereupon this court must rehear and determine said cause or proceeding as in case of jurisdiction obtained by ordinary appellate process.''
. . . And, also, l. c. 321, that the writ ''will be denied, when the reason assigned for its exercise is that the Court of Appeals has decided the case before it contrary to and in disregard of the last previous ruling of

this court . . . or for that matter any or all other decisions and opinions of this court.' The right of the Court of Appeals to consider and determine a case, when before it, involved of necessity the right to determine it incorrectly as well as correctly."

In State ex rel. v. Broaddus, 207 Mo. 107, an alternative writ of mandamus was issued by this court against the Court of Appeals. There, as here, relator charged that the Court of Appeals had disregarded the decisions of this court, and had disposed of the case contrary to our rulings thereon. In disposing of that question this court, on page 124 said: "Within the limits of its constitutional authority, the Court of Appeals has the same authority to hear and determine questions of law which the particular case before it involves as has any other court of this State over which it may have jurisdiction."

In State ex rel. v. Smith, 101 Mo. 174, the opinion is as follows: "This is an application for a writ of *certiorari* directed to the judges of the Kansas City Court of Appeals. This writ, under constitutional provisions, is strictly the common law writ of that name; it only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued, and which are jurisdictional in their nature. [Railroad v. State Board, 64 Mo. 294.] As the Kansas City Court of Appeals confessedly had jurisdiction this must prevent the issuance of the writ prayed for, and it is denied. All concur."

And this court in the case of Zellars v. Surety Co., 210 Mo. 86 l. c. 106, held that: "The utterance of one court within its own bounds is as much the utterance of the judicial department of the State, is as much the utterance of the State itself, as that of any other constituent member of the same judicial system. It is the State in its sovereignty that renders the judgment, and if it chooses to change the jurisdiction from

one court to another it has the power to do so and the jurisdiction exercised is the same whether exercised by one court or another.''

And in the case of Smith v. Mo. Pac. Ry. Co., 143 Mo. 33, this court in construing the same section of the Constitution held that where one of the judges of the Kansas City Court of Appeals appended to the unanimous opinion of that court the words, ''While concurring in the foregoing opinion, . . . I yet feel doubtful as to whether or not the conclusion reached can be harmonized with'' a former opinion of the Supreme Court, that those words did not meet the requirements of the Constitution which says, that when one of the judges of a Court of Appeals deems its decision contrary to any previous decision of the Supreme Court, the cause should be transferred to the Supreme Court. This court also held that in that opinion the word ''deem'' as used in the Constitution, meant that the judge of the Court of Appeals must believe or be of the opinion that the decision is contrary to a former decision of the Supreme Court, and not merely ''feel doubtful'' about it. Continuing, this court said: ''In this case the court [meaning the Court of Appeals] has made the order. But the order is not the fact that confers the jurisdiction upon this court. Jurisdiction is conferred by the fact that one of the judges deems the decision contrary to a former decision; the jurisdiction vests whether an order is made or not. If the order was made for the reason appearing upon the record that one of the judges deems the decision contrary to a former decision of one of the courts, we might presume the existence of the jurisdictional fact, though the record did not otherwise show it. But when the judgment shows upon its face that no cause for the transfer existed, that the jurisdiction of the Supreme Court did not vest, we have no right to presume the contrary. 'Within the sphere of its constitutional authority, a court of ap-

peals has the same right to hear and determine questions of law, which the cases before it involved, as has this court [the Suppreme Court] in causes which belong here.' "  [State ex rel. v. Smith, 105 Mo. 6.]

In Clark v. Railroad, 179 Mo. l. c. 72, this court said:  "The respondent has filed a motion to remand the cause to the St. Louis Court of Appeals, because he claims that an analysis of the cases with which the decision of the Court of Appeals in this case was deemed by said judge of said court to conflict, shows that no such conflict exists.  But this motion must be overruled, because the jurisdiction of this court in such cases does not depend upon the fact that there is in reality any such conflict, but depends solely upon the fact that one of the judges of the Court of Appeals deemed such conflict to exist.  This court may be fully satisfied that there is no such conflict, but it can not remand the case, because the Constitution makes it the duty of this court, in such cases, to rehear and determine the cause as in case of jurisdiction obtained by ordinary appellate process."  In State ex rel. v. Rombauer, 140 Mo. l. c. 124, this court said:  "The Constitution (and art. 6, sec. 6) requires the Court of Appeals to certify to this court, for decision, all cases wherein a judge of the former shall deem the opinion therein to be 'contrary to any previous decision of any one of said Courts of Appeals or of the Supreme Court.'  In the case of the State ex rel. v. Smith 107 Mo. 527, it was ruled that whether such conflict exists is a question for the sole determination of the judges of the Courts of Appeals, and the Supreme Court is given no power to determine it for them. Respondents each say, in return to this writ, that, in their opinion, no such conflict exists.  On the authority of the case cited, a peremptory writ of *mandamus,* claimed on the ground that there is such conflict in the decisions, must be denied."

In State ex rel. v. Rombauer, 125 Mo. l. c. 634, this court said: "It is not contended by the relator here, that the St. Louis Court of Appeals did not have appellate jurisdiction in said cause, but that the decision therein of said court is contrary to the decision of this court in State ex rel. v. Fitzgerald, 44 Mo. 425, and that in such case this court has power by *mandamus* to compel the Court of Appeals to transfer the cause to this court, although no one of the judges of the Court of Appeals is of the opinion that their decision does so conflict. Under the constitutional amendment of 1884, in cases coming within the appellate jurisdiction of the Courts of Appeals, no appeal lies from those courts to the Supreme Court. By section 6 of that amendment it is provided that 'the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeal. The only provision made for a review of the decisions of such Courts of Appeals, in cases within their appellate jurisdiction, is that 'when any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process.' While by section 8 of the amendment, the Supreme Court is given superintending control of the Courts of Appeals by *mandamus,* prohibition and *certiorari,* it is well settled law that the writ of *mandamus* cannot be made to take the place of an appeal or writ of error, or to perform their functions. Whether a case within the exclusive appellate jurisdiction of

the Courts of Appeals can be transferred to the Supreme Court at all depends upon the judicial determination by one of the judges of that court that its decision in such case is in conflict with a previous decision of one of said courts or of the Supreme Court. The exercise of this judicial discretion can not be controlled by *mandamus*. As was said in State ex rel. v. Smith, 107 Mo. 527: 'To grant the writ in this and like cases is to make the writ of *mandamus* perform the functions of an appeal, and thus do indirectly what the Constitution says shall not be done directly.' The superintending control given to the Supreme Court over the Courts of Appeals is to be exercised, not by invading their jurisdiction, controlling their judgments or the judgment of any one of their judges, but by keeping them within their jurisdiction and compelling them, if need be, in a proper case, to exercise their jurisdiction. For such purposes *mandamus* and prohibition are legitimate remedies for suitors in those courts, but not for the purpose of bringing before us for review the judicial determination by such courts or any of its judges of any question within their exclusive jurisdiction. As no one of the judges of the St. Louis Court of Appeals was of the opinion that the decision of that court in the relator's case was in conflict with a previous decision of this court, it did not become the duty of said court to transfer the cause to this court, and its refusal to do so affords no ground for the exercise of the mandatory power vested by the Constitution in the Supreme Court over that tribunal. [State ex rel. v. Smith, supra; State ex rel. v. Philips, 96 Mo. 570.]''

To the same effect are the cases of Bradley v. Milwaukee Merchants Ins. Co., 163 Mo. 553; Bradley v. German American Ins. Co., 163 Mo. 559; Gipson v. Powell, 167 Mo. 192; Railroad v. Smith, 154 Mo. 300; Schafer v. Railroad, 144 Mo. 170; Seaboard Bank v. Woesten, 144 Mo. 407; Wilden v. McAllister, 178 Mo.

732; Rodgers v. Fire Ins. Co., 186 Mo. 248; State ex rel. v. Smith, 129 Mo. 585; State ex rel. v. Philips, 96 Mo. 570; State ex rel. v. Broaddus, 207 Mo. 107.

There are many other decisions of similar import rendered by this court, extending down almost to the present time; and they unanimously hold that this court has no power or authority by writ of *certiorari*, *mandamus* or prohibition, to review, direct or control the decisions of the various Courts of Appeals, so long as they act within their respective jurisdictions, even though their decisions may be erroneous or in conflict with the opinions of this court, except where causes are certified by those courts, or one or more of the judges thereof, to this court in the manner designated by said section 6 of the Amendment to the Constitution in the year 1884. That has been the settled law of this State ever since the adoption of the amendment mentioned, more than a quarter of a century ago. Not only has this been the settled law of this State during that long period of time, but it is the basis and one of the chief corner-stones upon which the judicial system of the State is bottomed, and upon that basis the Legislature has organized and reorganized that system.

With that construction repeatedly placed upon said section of the Constitution by this court, the law-making power of the State, in the exercise of its sovereign power, has created another Court of Appeals, namely, the Springfield Court of Appeals, thereby giving the State three such courts, whose jurisdictions combined covers the entire State. Not only that, the Legislature first increased the jurisdiction of the various Courts of Appeals from $2500 in amount to $4500, and recently from the latter sum to $7500.

Clearly these enactments of the Legislature respecting the Courts of Appeals had for their object the speedy administration of justice, solemnly guaranteed to every citizen by the Constitution of the State.

The crowded condition of the docket of this Court, and the great length of time we were behind with our work, practically nullified the constitutional provision latterly mentioned. In order to relieve that situation, the Legislature enacted the laws creating an additional Court of Appeals and increasing the jurisdiction of them from $2500 to $7500. And now at this late date, after the population and business of the State has almost doubled and litigation probably quadrupled, for this court to reverse its former rulings and decisions, regarding the various Courts of Appeals and their jurisdiction, would unsettle, confuse and greatly retard the speedy administration of justice. In fact it would practically amount to a denial of justice, for the reason that it would open up the flood gates to the hundreds and thousands of cases which are now appealed to and finally disposed of by the various Courts of Appeals, and further open wide the doors of this court to all those who might deem the decisions and rulings of those courts to be in conflict with the previous rulings of this court.

No one can foretell what the end would be. There are probably three or four times as many cases appealed to, and finally disposed of by, those courts, as are disposed of by this; and it is safe to say that under the unsettled and conflicting decisions of this court, a very large percentage of the cases disposed of by those courts would naturally find themselves knocking at the doors of this court for admission, and doubtless many of them would find lodgment herein. Even though this court should refuse the majority of the writs applied for against the Courts of Appeals, nevertheless, it would take almost as much of the time of this court to investigate the record briefs and authorities presented with the applications for the writs, as it would to dispose of the cases upon their merits.

As it is, more than one-third of the time and labor of this court is now devoted to the consideration and

disposition of original writs of one form or another. And should we turn this new avenue of litigation into this court, I feel perfectly safe in saying that at least one-half of the remaining time and labor of this court would have to be devoted to this new class of litigation, which would leave us only one-third of our entire time to dispose of our already crowded and much delayed docket, which will take some two or three years for us to clear up, even if no more cases should be brought here. But if in addition to the class of cases which now comes here under due course of law, we should open the doors of this court to this new class and review the decisions of the various courts of appeals every time a litigant considered himself aggrieved thereby, then no man living could foresee the end of this docket or predict when a case would be reached by this court.

Not only this, but such a policy or course would practically destroy the usefulness of the various Courts of Appeals themselves, because each and every one of their decisions would become the subject of review by this court, on a writ of *certiorari, mandamus* or prohibition, instead of by appeal, as was generally the case when we had only the St. Louis Court of Appeals.

The right and authority of this court to review the decisions of the St. Louis Court of Appeals, as it was originally organized, practically destroyed its usefulness as a court. Proportionately as many cases were appealed from that court to this, as were appealed from the circuit courts comprising that district. While a large per cent of them were not appealed, however, the extra expense incurred and delay caused by those appeals practically offset and out-weighed the good produced by the decisions not appealed from. In other words, insofar as the public at large was concerned, the good accomplished by that court was practically destroyed by the delays and expenses

caused by the appeals, which were taken therefrom to this court. And obviously that was the inducing cause which lead to the adoption of section 6 of the Amendment to the Constitution in 1884, giving to the various courts of appeals exclusive and final jurisdiction over the matters and things intrusted by the Constitution to their care and keeping, and sheering this court of the power and authority to review their action.

While it is true in all probability we would and should refuse the issuance of such writs in the great majority of such cases, however, no one who is at all familiar with the lavish hand with which this court issues such writs would for a moment doubt but what multitudes of them would issue and bring to this court innumerable cases which should find a final resting place in the various courts of appeals. By so doing we would not only deestroy the importance of those courts, but would practically destroy their usefulness, as previously stated, by announcing in advance to the world that their opinions and decisions are of little or no value until they receive the sanction of this court. In other words, we would relegate them to the same plane, practically, upon which rest the various circuit courts of the State, however, with a much more limited jurisdiction. That being true, then why not abolish them altogether and be done with them, and confer upon this court in the first instance all the duties now resting upon the Courts of Appeals?

In order to reach the conclusions stated in the majority opinion, it was necessary to, and the court has overruled the unbroken line of cases before cited, and has practically nullified said section 6 of the Amendment of the Constitution.

For that authority the court relies upon section 3 of article 6 of the Constitution, which reads as follows: "The Supreme Court shall have a general superintending control over all inferior courts. It

238 Sup.—16

State ex rel. v. Broaddus.

shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same.''

That section of the Constitution is almost a literal copy of section 3 of article 6 of the Constitution of 1865, and consequently had no application to the Courts of Appeals at the time of its adoption, for the reason that then we had no such court. However, when it was reincorporated into the Constitution and adopted in 1875, its provisions were sufficiently comprehensive to embrace the St. Louis Court of Appeals, which was created by the same instrument. See section 12, article 6, Constitution 1875.

But clearly it was not intended that it should apply to them, for the simple reason that section 8 of the amendment of 1884, presently to be quoted, was adopted for that purpose.

And it must be remembered that that court at that time had no final appellate jurisdiction, except in cases where the amount in dispute exceeded the sum of $2500. Appeals might be taken from its decisions in all other cases to this court, and writs of error were issuable from this court to it. [Sec. 12, article 6, Constitution 1875.] Consequently there was no necessity to resort to an original writ under that section or any other to bring its proceedings before this court for review, except in those cases where the amount in dispute was less than $2500; and in so far as I have been able, I have found no case where this court ever issued an original writ against that court for the purpose of reviewing its decisions upon the merits thereof, but were limited in each and every case for the purpose of keeping that court within its jurisdiction, in the same sense and for the same purpose that we issued them to the circuit courts. But in 1884, when our judicial system was reorganized, by the amendment of the Constitution, and the various Courts of Appeals were created or authorized, a different system was

provided for.    Section 6 of that amendment, in terms, is limited to the various Courts of Appeals, gives them exclusive jurisdiction in certain cases and makes their decisions thereon conclusive, except in the manner as therein provided, namely: ''When any one of the said Courts of Appeals shall render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said Courts of Appeals or of the Supreme Court, the said Court of Appeals must of its own motion pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must *rehear and determine* said cause or proceeding, *as in case of jurisdiction obtained by ordinary appellate process.''*

I have italicized the words of the Constitution which gives to this court the power and authority to review the decisions of the Courts of Appeals, and no other words or language of like character or import are to be found in that authoritative instrument.

That the words of the Constitution so italicized mean just what this court has so frequently held that they do, namely, that the Supreme Court has no authority to review the decisions of the Courts of Appeals, except when certified to it, by one of the judges thereof, as provided for by section 6 of said amendment, is strengthened by a careful consideration of section 12 of article 6 of the Constitution of 1875, which created the St. Louis Court of Appeals.    By an inspection thereof and a comparison of it with the section to be presently mentioned, it will be seen that the framers thereof  did not think that section 3 of the same article 6, which was borrowed from the Constitution of 1865, was sufficient to authorize this court to review the decisions of that court, for the reason that by section 12 they expressly provided for appeals

to this court, and for the issuance of writs of error from this court to that, for the purpose of having this court review the decisions of that. If the framers of the Constitution were of the opinion that said section 3 thereof was sufficient authority for this court to review the decisions of the St. Louis Court of Appeals, then I ask, why did the same framers of the Constitution, at the same time and in the same article, provide in section 12 thereof (which created that court) that this court might review its decisions on appeal, or by writ of error? The mere asking of the question answers it, and that too in harmony with the long line of decisions of this court, which hold that the Supreme Court has no such authority, except when a cause is certified to it in the manner pointed out by section 6 of said amendment.

It seems to me, independent of the former rulings of this court upon this question, that if there ever was a case in the world where the maxim, *"Expressio unius est exclusio alterius,"* should and does apply, this is that case. And especially should that be true at this late date, after our judicial system has been bottomed upon and reconstructed upon and along that idea, and that too, when we know what dire results a departure therefrom, at this time, will have upon our judicial system, the courts of the State, litigants and the business interests generally.

As previously stated, while the language of section 3 of article 6 of the Constitution of 1875 is broad enough to embrace the St. Louis Court of Appeals, when created, however, I am clearly of the opinion that it has no application whatever to the present Court of Appeals, for the reason that, when they were created, section 8 of the Amendment of 1884 was adopted especially for the government of those courts. That section reads as follows: "The Supreme Court shall have superintending control over the courts of appeals by *mandamus,* prohibition and *certiorari.*"

According to the maxim, *Exclusio,* etc., before
quoted, and that all sections of the Constitution should
be construed in *pari materia,* especially those of the
amendment of 1884, this special constitutional pro-
vision must exclude the idea that section 3 of article
6 has any application to those courts. But be that as
it may, ''The superintending control given to the
Supreme Court over the Courts of Appeals (which
was given by said section 3 or 8, or both) is to be
exercised, not by invading their jurisdiction, controll-
ing their judgments, or the judgments of any one of
their judges, but by keeping them within their jurisdic-
tion and compelling them, if need be, in a proper case,
to exercise their jurisdiction. For such purposes,
*mandamus* and prohibition (and *certiorari*) are legiti-
mate remedies for suitors in those courts, but not for
the purpose of bringing before us for review the
judicial determination by such courts, or any of its
judges of any question within their exclusive jurisdic-
tion.'' [State ex rel. v. Rombauer, 125 Mo. l. c. 635.]

According to all constitutional and statutory
canons of construction, when a court is created and
special constitutional provisions are adopted prescrib-
ing its jurisdiction and mode of procedure, as is true
of the Courts of Appeals, those provisions will control,
and if there is any conflict between those special pro-
visions and the general provisions of the Constitution,
the former and not the latter should control. That
being true, I am unable to see in what possible manner
it can be seriously contended that section 3 of article
6 authorizes this court to invade the exclusive juris-
diction of the Courts of Appeals and review the de-
cisions thereof.

And again, said section 3, in express terms, ap-
plies as well to circuit courts and all inferior courts as
it does to the Courts of Appeals (if it applies at all to
the latter, which I deny), and now, would it be contend-
ed for a minute that this court by writ of *mandamus,*

prohibition or *certiorari*, could invade the jurisdiction of the circuit court and review the decisions thereof, where there, as here, that court has unquestioned jurisdiction of the parties and the subject-matter of the actions? Most certainly not, and this court has so held innumerable times. If then, this court has no such authority to invade the jurisdiction of the circuit court by such a writ, then pray tell me from whence it derives the authority to invade the jurisdiction of the Courts of Appeals? The same language of the Constitution can not mean one thing when applied to the circuit courts, and have quite a different meaning when applied to the Courts of Appeals.

Viewing this case from whatever standpoint you may, there is no authority or reason, in my judgment, upon which the majority opinion can be predicated, except that the court has the physical power to so do.

And I predict, that the opinion of the court will be no less startling to the Bench and Bar of the State than would be a clap of thunder from a clear sky; certainly the former would be less expected.

There are several other legal propositions presented by this record, but for the reasons before stated, I am perfectly satisfied that this court has no jurisdiction of the cause, or authority to decide them; and I therefore express no opinion upon any of them.

I am also of the opinion, that the writ of *certiorari* should be quashed, and that the respondents should recover their costs incurred or expended.

Since writing the foregoing dissenting opinion, the following paragraph has been stricken from the majority opinion written by Judge BROWN, viz.: "However, it is the opinion of the writer and a majority of his associates, that the rule of law announced in these last named cases, confines the superintending power of this court within too narrow a channel, and we refuse to follow that rule in this case."

The cases above referred to by my Brother Brown are, State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 207 Mo. 107; Railroad v. Smith, 154 Mo. 300. The rule announced in those cases, as stated by Brother Brown in the majority opinion, is as follows:

"The Constitution requires the Courts of Appeals, and each of them, to confer their decisions to ours; yet we have conceded to a Court of Appeals, in some cases, where the matter was presented by litigants, the right to decide upon its own responsibility, whether its decision was in conflict with prior decisions of this court."

Also since writing my dissenting opinion, the opinion written by Judge Ferriss has been filed herein.

By that alteration made in Judge Brown's opinion, and the filing of that of Judge Ferriss, they have changed the form of the opinion of the majority of the court, but they have not changed the legal effect of the opinion of the majority, as it was originally written by Judge Brown.

I therefore adhere to the views as originally expressed by me in the dissenting opinion filed.