**MARCO FINANCE COMPANY, Appellant,**

v.

**SOLBERT INDUSTRIES, INC., Respondent.**

**No. 57014.**

Supreme Court of Missouri,
Division No. 1.

Jan. 8, 1973.

Motion for Rehearing Denied Feb. 12, 1973.

**14**

Harold T. Van Dyke, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for appellant.

Phillip A. Kusnetzky, Koenigsdorf, Kaplan, Kraft & Fox, Kansas City, for respondent.

HIGGINS, Commissioner.

Action in replevin with a total prayer of $49,600, in which plaintiff appeals from judgment for defendant entered on defendant's motion for directed verdict at the close of plaintiff's case. (Appeal taken prior to January 1, 1972.)

Plaintiff's Petition in Replevin was filed April 4, 1968. On the same date plaintiff's Bond in Replevin was filed and approved and an Order of Delivery in Replevin was entered. On April 6, 1968, the Sheriff of Jackson County served defendant by delivering a copy of the petition to Chester Kaplan, registered agent for Solbert Industries.

Plaintiff's petition, Count I, as ultimately amended, alleged:

That on July 6, 1967, a Security Agreement was executed between one W. B. Baker as debtor and Malt Village Franchising, Inc., as secured party, whereby Malt Village was given a security interest in some twenty-six items of personal property described in the agreement as "Standard Equipment For All Malt Village Drive-Ins," and located at 11810 Blue Ridge Extension, Kansas City, Missouri; that a copy of the agreement had been attached to plaintiff's original petition; that on July 6, 1967, said security agreement was assigned to plaintiff and filed in the office of the Jackson County Recorder of Deeds under Section 400.9–401, V.A.M.S. (Uniform Commercial Code), and on July 12, 1967, in the office of the Missouri Secretary of State;

That said Security Agreement was given to secure payment of a $16,960 promissory note of July 14, 1967, by said Baker to

Malt Village; that payments on the note were in default at the time when defendant took the property described in the Security Agreement; that by terms of the note, the holder had demanded all payments as due and payable; and that plaintiff, by reason of the default, was the owner of and lawfully entitled to possession of the property described in the Security Agreement. (All of which was specialty equipment for a dairy-type drive-in.)

That said property was and is wrongfully detained by defendant who has, since filing this suit, wrongfully disposed of same; that the value of the property is $16,600; that it has not been seized under any process, execution or attachment against the property of plaintiff; that defendant, after notice of this replevin action, wrongfully and illegally refused to deliver the property to plaintiff or to the sheriff, and sold same, thereby depriving plaintiff of its security interest in the property;

That the property was taken by defendant on or about March 22, 1968, and sold by defendant on or about May 15, 1968, at a storage building at 6214 East Truman Road in Jackson County, where it was being wrongfully withheld; that plaintiff was further damaged in sum of $5,000 by defendant's said wrongful detention of the property, and was also entitled to attorney fees in sum $3,000.

By Count II plaintiff alleged the described acts were accomplished by Chester B. Kaplan, secretary of defendant, and were done wrongfully, wilfully and with malice to the extent of $25,000 punitive damages.

Defendant answered plaintiff's second amended petition and alleged that it failed to state a cause of action and generally denied same.

Defendant further stated: that it, as plaintiff, had filed in the magistrate court a petition for money due from Malt Franchising, Inc., and had attached certain items on the premises of real estate owned by Solbert Industries, Inc., which was the subject of a lease between Solbert and Malt Village; that plaintiff's predecessor, Malt Village, never had a valid security interest in any of the items thus claimed by Solbert; that such items were part of the leased building and were the property of Solbert; that Solbert was never in possession of the property described and claimed by Marco in its petition in replevin, but were attached by the constable in Solbert's suit against Malt Village and were in the constable's possession at the time Marco filed its Petition in Replevin.

Defendant further alleged that plaintiff was guilty of laches and had waived its asserted rights by failure to intervene in Solbert's petition for money due from Malt Village.

Plaintiff called six witnesses in support of its Petition in Replevin.

W. B. Baker was a commission salesman of franchises for, and a stockholder in, and a vice president of Malt Village Franchising, Inc. In 1967, he also became a franchisee and entered into an agreement with Malt Village under which Malt Village subleased to him a building for a malt shop for a stated rental. Malt Village leased the building, located at 11810 Blue Ridge Extension, from Solbert Industries, Inc., and it was accepted by Mr. Baker on behalf of Malt Village.

Malt Village sold the specialty equipment to Mr. Baker; he paid some money down and signed a Promissory Note and Security Agreement for the balance. The note and security agreement were assigned to Marco Finance Company which furnished the money to pay Malt Village for the equipment. The security argeement, filed July 6, 1967, listed W. B. Baker as debtor, Malt Village Franchising, Inc., as secured party, and Marco Finance Company as assignee. The specialty equipment listed on the second sheet of the security agreement was then warehoused in St. Louis and was placed in the building upon its completion.

Mr. Baker's monthly rent payments were $550, and he made a down payment of $2,200 for four months' rent in advance.

Mr. Baker commenced business in August, 1967. He paid his rentals to Malt Village and Malt Village, in turn, paid its rent obligations to Solbert. Mr. Baker defaulted on his rent in January, 1968; and on January 23 or 24, 1968, his daughter, who operated the business, found the locks changed and was unable to enter the leased premises. Mr. Baker then called Mr. Solbert who told him the equipment had been attached, whereupon Mr. Baker advised Mr. Solbert that the equipment in the building was mortgaged. Mr. Solbert told Mr. Baker that he was holding the equipment and would withhold entry into the premises until the rent was paid. Mr. Baker subsequently learned that his equipment had been removed from the building. He did not know when the removal occurred or who accomplished it, but thought it was about ten to twelve days after his conversation with Mr. Solbert.

Mr. Baker had observed installation of the specialty equipment. Two sinks were installed, one under the counter and another in the service room, at the time the building was built. The air-conditioning unit sat on a platform over the rear door, similar to the installation of a window air conditioner with ducts inside the building. The walk-in freezer was a self-contained unit. The bulk milk dispenser and coffee maker sat on a table. The grill and deep-freeze units and vessels were set in place; their hood was attached to the building.

Arrangements for the franchise between Mr. Baker and Malt Village included a down payment of $2,000 by him and a credit for $600 for his regular commission. The total deal was for some $22,650 and a note covered the balance due on the equipment.

Douglas Chenault, chief deputy constable of the Seventh District Magistrate Court, brought with him the records of that court concerning Solbert's suit against Malt Village. The action was commenced by petition and affidavit filed March 22, 1968, and writ of attachment issued March 25, 1968. His return showed an attachment was made March 28, 1968, in Jackson County, and service was obtained on Malt Village April 7, 1968, by leaving a copy of the petition and summons with Becky Weise, its secretary-treasurer, at its office in St. Louis County. The writ of attachment listed all equipment of Malt Village at 118th and Blue Ridge. Constable Chenault went to that address and attached the property but did not remove any of the attached property. He later went to a warehouse on Truman Road and made his list of equipment which he sold May 15, 1968, after default judgment had been entered April 22, 1968. The sale grossed $1360, out of which Constable Chenault paid Solbert $185 for dismantling the equipment, $156 for storage from March 25 to May 15, 1968, and the balance of $1019 to the attorney on Solbert's judgment.

Constable Chenault attached the property in his usual way; he saw nothing unusual in the sale or the price obtained. Certain listed items were not sold and he presumed they had been left in the building.

Stella Maroon of the Jackson County recorder's office brought with her the financing statement filed July 6, 1967. It contained a list of "Standard Equipment for A–1 Malt Village Drive-Ins." The instrument is a standard form and complies with the Uniform Commercial Code. The document was indexed under "B," for W. B. Baker, to show the debtor rather than secured party or assignee in compliance with the Uniform Commercial Code, under which the same also was filed with the Secretary of State at Jefferson City.

Edwin L. Wiese was a former employee of Malt Village in its equipment and supply division. He valued the equipment in the store at 118th and Blue Ridge, as of the time of taking by defendant, at $16,605.87. On or about March 18, 1968, a Mr. Pankratz called him and told him the subject equipment had been taken from the

store. At that time Mr. Baker was the debtor, and Marco and Central National Bank in Chicago had the security agreement or mortgage on the property.

Austin Van Buskirk was the attorney who first handled this replevin action. Mr. Kaplan, service agent of Solbert, called him the same day he was served, stating he would be out of town, and requested an extension of time in which to answer. The requested extension was given, as were additional extensions upon request of either Mr. Kaplan or Mr. Kusnetzky. "When he [Mr. Kaplan] originally called me I asked him about it [the property subject of the replevin] and he stated he had it in a warehouse at that time. * * * I wanted to remove it to our own warehouse * * * and he * * * stated that it wouldn't make any difference where it was retained, and that we'd discuss it when he returned to town. * * * on at least one occasion, if not several occasions, we discussed the fact that he had possession, and at the beginning when the lawsuit was initially commenced, I wanted possession myself, but he said that—we discussed it as far as we'd have to get a moving truck to move the items and that would be an expense and also the fact that we would have to then pay the storage, and we more or less—we didn't come to any particular agreement, but I didn't push thereafter to have the merchandise moved to any warehouse of my own. * * * it was understood clearly that whoever had the merchandise would keep it until the lawsuit was adjudicated, settled or occurred in court." With respect to the attachment action, "the court out there had not settled the matters as to the possession between the people involved in that lawsuit."

Ernest Pankratz was treasurer of Marco. He handled the loan whereby Marco became the assignee of a promissory note given Malt Village for the unpaid balance on specialty equipment purchased by W. B. Baker from Malt Village for use in a drive-in at 11810 Blue Ridge Extension.

The note and security agreement provided that the debtor, Baker, would be in default when he failed in payment of any of the obligations of the note, and that the secured party, Marco, after default, could declare all obligations immediately due and payable, and could require the debtor to assemble the collateral equipment for the benefit of the secured party. Mr. Baker paid six of his obligated monthly payments, the last of which covered January, 1968. Mr. Baker called Mr. Pankratz in February, 1968, to say the equipment was about to be removed, and Mr. Pankratz then called Mr. Van Buskirk and employed him to file this replevin action. He did not then know of the attachment suit and Mr. Van Buskirk told him that he had agreed with Mr. Kaplan that there would be no disposal of the subject equipment until the replevin action was concluded. His further talks with Mr. Van Buskirk were to the effect that Mr. Kaplan continued to ask for continuances and that they would come to some understanding about disposition of the equipment. He subsequently learned that Solbert already had disposed of the equipment. The security agreement was executed and filed prior to installation of subject equipment on the Solbert premises. Marco was never served with process in the attachment action. No waiver was procured from the landlord, Solbert, in this instance, because the security agreement had been filed prior to installation of the subject equipment.

At the conclusion of the foregoing case for plaintiff, defendant moved for directed verdict on grounds:

"1. That plaintiff has produced no evidence showing that it owned or was lawfully entitled to possession of the property sought at the commencement of this action, as is required by law.

"2. That plaintiff has produced no evidence showing that defendant wrongfully detained the property sought at the commencement of this action, as is required by law.

"3. That plaintiff has produced no evidence showing that the property for which recovery was sought in this replevin action was not seized under any process, execution or attachment at the time of the institution of this action as is required by law, but rather evidence brought forth during plaintiff's case shows that the contrary was true."

Defendant's foregoing motion for directed verdict was sustained, and plaintiff subsequently moved to have the order sustaining defendant's motion for directed verdict set aside; and, in the alternative, for a judgment for plaintiff, or a new trial, on grounds:

"1. The plaintiff produced evidence showing it was lawfully entitled to possession of the property at the commencement of this action.

"2. The plaintiff produced evidence showing that defendant wrongfully detained the property sought at the commencement of this action.

"3. The plaintiff produced evidence showing the property sought in this replevin was not seized under any lawful process, execution or attachment at the time of the institution of this action.

"4. The plaintiff made a submissible case for the jury.

"5. Plaintiff's evidence showed conclusively that judgment should have been directed for plaintiff against the defendant.

"6. The Court erred in sustaining defendant's Motion for Directed Verdict."

Plaintiff's foregoing posttrial motion was overruled, and on this appeal appellant contends the court erred in directing a verdict for defendant because:

"A. The plaintiff produced evidence showing it was lawfully entitled to possession of the property at the time of the commencement of this action.

"B. Plaintiff produced evidence that the defendant wrongfully seized the property and wrongfully detained it.

"C. The plaintiff produced evidence showing the property sought in this replevin was not seized under any lawful process, execution or attachment against the property of plaintiff at the time of the institution of this suit."

Respondent counters these contentions, asserting, as it did at trial, plaintiff's failures with respect to sufficiency of evidence to sustain its petition in these three respects.

This appeal is thus limited to the three questions raised by defendant's motion for directed verdict relating to sufficiency of evidence, the substance of which has been stated in some detail because it demonstrates an affirmative answer to each such question.

I. Did plaintiff produce evidence showing it owned or was lawfully entitled to possession of the subject property at the time of commencement of its replevin action?

A jury reasonably could find: that W. B. Baker, as debtor, executed a Security Agreement securing his promissory note to Malt Village Franchising, Inc., for the balance due to Malt Village on certain equipment sold to Mr. Baker for operation of a Malt Village Drive-In; that the thus secured party, Malt Village, assigned the note to plaintiff, Marco Finance Co., and received payment for the equipment it sold Mr. Baker in the amount represented by Mr. Baker's promissory note; that such documents were forms that comply with the Uniform Commercial Code and were duly filed in the county where the equipment was installed in realty as required by the Code; that Mr. Baker was in default on his note after January, 1968, by his failure to make monthly payments required by the note; that the note provided that in case of such default, the secured party may

declare the balance due and payable and may require the debtor to assemble the collateral for benefit of the secured party; that upon such default the plaintiff became the owner and had the right to possession of the property, and that such right of ownership and possession arose prior to and existed on April 4, 1968, the date upon which plaintiff filed this replevin suit, as required by Chapter 533, V.A.M.S.

■ Plaintiff's status as assignee of the secured party is not detrimental to its right to recover in replevin because an assignee has sufficient interest in property to maintain replevin against a trespasser or an officer levying to satisfy a subordinate lien. 77 C.J.S. Replevin § 51, p. 35; § 400.9–405(2), V.A.M.S. See also First Nat. Bank of Clayton v. Trimco Metal Products Co., Mo., 429 S.W.2d 276, 277 [1, 2].

Respondent makes an argument based upon comment 7 from the Uniform Commercial Code upon which section 400.9–302(2), V.A.M.S., is based to the effect that if the assignment from the seller of goods to the assignee was intended for security "or was a sale of accounts, contract rights or chattel paper," the assignee must take whatever steps, additional filing, etc., as may be required for perfection in order to be protected against seller's transferees and creditors.

In its presentation of this argument, respondent concedes "that plaintiff might have properly brought its replevin action on April 4, 1968, against those actually having possession at the time this action was filed"; and the obvious answer to the argument is that the evidence does not show, without room for argument, that the assignment to Marco was an assignment of accounts of the assignee, Malt Village, nor an assignment of contract rights, as opposed to an assignment of Mr. Baker's debt and note, as demonstrated.

II. Did plaintiff produce evidence that defendant wrongfully seized the property and wrongfully detained it?

A jury reasonably could find: that the property in question was in Mr. Baker's Malt Shop at 11810 Blue Ridge Extension in a building owned by defendant, Solbert Industries, Inc., leased to Malt Village Franchising, Inc., and subleased by them to Mr. Baker; that on or about January 23 or 24, 1968, the locks were changed by the landlord, Solbert, and Mr. Baker was thus locked out of the building; that he called Mr. Solbert who told him he was attaching the property in the building; that defendant moved the property from the building ten to twelve days later and held it in a warehouse until May 15, 1968, when it was sold; that such constituted a wrongful seizure and detention by defendant of property in which plaintiff had a right to possession, as previously demonstrated, and as required to be shown by Chapter 533, supra.

Respondent argues that plaintiff failed on this score, asserting that the evidence showed that on April 4, 1968, the date upon which this replevin suit was filed, the property in question was in possession of the constable pursuant to writ of attachment and that plaintiff should have brought its suit against him as the party in possession.

Such argument appears at first persuasive, but it overlooks testimony which precludes it from control of this case as a matter of law.

Constable Chenault stated that he attached "all equipment of the Malt Village Franchise Corporation" at 11810 Blue Ridge. However, he did not take or remove the property; it was taken from the Malt Shop and stored on Truman Road by someone else, and he made his list of property for his return at the warehouse. Mr. Van Buskirk, plaintiff's former attorney, prepared this suit, and he discussed it with Mr. Kaplan, service agent for defendant, after service was accomplished. Mr. Kaplan and later his associate, Mr. Kusnetsky, asked for several extensions of time for answer. Mr. Kaplan also advised Mr. Van Buskirk that he had the property in a warehouse at that time. Mr. Van Buskirk wanted to place it in a warehouse under

his control, but Mr. Kaplan stated it would not make any difference where it was retained and they would discuss it further when Mr. Kaplan returned to town. On several occasions, "we discussed the fact that he had possession, and at the beginning when the lawsuit was initially commenced, I wanted possession myself * * *." At no time in their conversations was disposition of the property discussed, and it was understood that whoever had the property would keep it until the replevin action was adjudicated or settled.

The foregoing, together with other evidence previously noted, particularly the testimony of Mr. Baker respecting his conversation with Mr. Solbert and that of Mr. Van Buskirk, was evidence from which a jury reasonably could find with respect to the issue raised by respondent's argument, that Mr. Solbert and Mr. Kaplan, as opposed to legal attachment by Constable Chenault, took and retained possession of the property in question for defendant, Solbert Industries, and that they, on behalf of their principal, rather than the constable, had possession of and detained subject property. In such circumstances, respondent's argument of, and authorities supporting, exclusive lawful possession by an attaching constable are not controlling as a matter of law.

III. Did plaintiff produce evidence showing that subject property had not been seized under any lawful process, execution or attachment against the property of plaintiff at the time this replevin suit was instituted as required by Section 533.-010(4), V.A.M.S.?

It already has been demonstrated under question II that there was evidence from which a jury reasonably could find that the property sought by plaintiff had been wrongfully seized and detained by defendant as opposed to a lawful attachment in behalf of defendant. The same evidence would permit a jury reasonably to find that subject property had "not been seized under any process, execution or attachment against the property of the plaintiff" as of the date of commencement of this replevin suit.

Appellant contends also that the court should have directed a verdict in favor of plaintiff, asserting the evidence shows conclusively that: (1) plaintiff had title and right to possession of subject property; (2) defendant's attachment suit was illegal and of no effect; (3) plaintiff proved reasonable value of the equipment at the time of seizure; and (4) it therefore had a right to a money judgment in the amount shown.

The difficulty with this contention, particularly (1) and (2), is that in deciding questions I, II, and III in favor of appellant, it has been demonstrated only that plaintiff made a submissible case for the jury on such issues. Accordingly, the case must be remanded for new trial.

Judgment reversed and cause remanded.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.