**MARCO FINANCE COMPANY,**
Appellant,

v.

**SOLBERT INDUSTRIES, INC.,**
Respondent.

No. KCD 27008.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1975.

Motion for Rehearing and/or Transfer
Denied Feb. 9, 1976.

Application to Transfer Denied
April 14, 1976.

Harold T. Van Dyke, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for appellant.

Phillip A. Kusnetzky, Koenigsdorf, Kaplan, Kraft, Fox & Kusnetzky, Kansas City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and SOMERVILLE, J.

SWOFFORD, Presiding Judge.

This is the second appeal of this action in replevin. On the first appeal, the Supreme Court reversed a judgment for Solbert Industries, Inc. (Solbert) entered on its motion for directed verdict at the close of plaintiff's [Marco Finance Company (Marco)] case and remanded the action for a new trial. 490 S.W.2d 13 (Mo.1973).

The second trial, the source of this appeal, was before a jury and resulted in a verdict and judgment for Marco and against Solbert in the amount of $9,414.00. The court below, upon after trial motion, set this judgment aside and entered judgment for Solbert. It is from this latter judgment that Marco appeals.

This court has ordered up the Circuit Court file and the transcript in the first appeal. They have been carefully reviewed and the transcript in the first trial compared with the transcript in this appeal. From this, it appears that the evidence offered by Marco in the first trial was substantially the same as that offered in the trial below, with no differences pertinent to the issue here involved. The opinion of the Supreme Court sets out in detail Marco's evidence in the first trial. For the purpose of this second appeal, relevant facts may be thus summarized:

W. B. Baker was a commission salesman for, stockholder in, and vice president of, the corporation, Malt Village Franchisers, Inc. (Malt Village). In 1967, he also became a franchisee of Malt Village under the terms of which franchise Malt Village equipped a type of ice cream parlor at 11810 Blue Ridge Extension, in Kansas City, and placed Baker in possession thereof. The basic dispute involved here is the ownership and right to possession of, and security interest in, the equipment in this shop.

To purchase the equipment, Baker paid approximately $2,200.00 in cash and executed a promissory note to Malt Village, dated July 14, 1967, in the face amount of $16,960.00, and a Security Agreement pledging such equipment as collateral to secure such loan.

Prior to this, and before the equipment had been installed in the premises, Baker also executed a "Financing Statement" on July 6, 1967, covering this equipment and showing him as debtor, Malt Village as secured party, and Marco as assignee. This Financing Statement was filed in the office of the Recorder of Deeds in Jackson County, Missouri on the same day it was executed, July 6, 1967, and in the office of the Secretary of State of Missouri on July 12, 1967. Baker later defaulted in the payments on the promissory note and Marco,

asserting its rights as assignee thereof, sought to replevin the equipment involved in this suit. However, the equipment had theretofore been seized under an attachment by Solbert, which company, acting through its secretary and attorney Chester Kaplan, subsequently secured a default judgment in the Magistrate Court against Malt Village for unpaid rent on the building. During the pendency of this replevin action and at a time when Kaplan knew of its pendency and that Marco was represented by counsel, and after the Circuit Court had issued a delivery order for the personal property, Solbert, through Kaplan, requested the Magistrate Court to sell the equipment. This was accomplished and the equipment sold for about $1,350.00.

Solbert's connection with this matter arose by reason of the fact that it had agreed with Malt Village, acting through Baker, to construct the malt shop on Blue Ridge Extension and lease it to Malt Village. This was done. The lessee, Malt Village, was in default in the rental payments in January, 1968, which fact ultimately resulted in the Magistrate Court attachment suit and seizure and sale of the personal property located on such premises, which, in fact, was owned by Baker and encumbered to Malt Village, which encumbrance had been assigned to Marco.

In the second trial of the case, Solbert offered the evidence of two witnesses, whose testimony largely reiterated the facts above summarized, but with these exceptions and additions:

Sol Silberg, president of Solbert, stated that all of his dealings with Malt Village had been with Baker; that Baker did not advise him that he was a franchisee and would operate the business as such on Blue Ridge Extension; that he never received any rent directly from Baker under the lease; that he was never advised that there was a "mortgage" on the equipment; that he at all times thought the personal property was owned by Malt Village; and, that he had turned the matter over to Solbert's attorney, Kaplan, to do what was necessary to collect the unpaid rent and secure possession of the premises, and that he had no personal connection with the proceedings thereafter.

Chester Kaplan testified as to his connection with Solbert; that sometime between March 10th and 15th, 1968, with Malt Village in default, he found the shop premises vacated and locked; that he checked both the records in the Recorder's office and those of the Secretary of State, under the name of "Malt Village Franchising, Inc." and found no record of any lien on the equipment; that he then instituted the Magistrate Court suit and caused the property to be attached, stored and sold under execution in May, 1968; and that no one ever advised him that there was any "mortgage" on the equipment.

Kaplan testified that the Constable in the Magistrate Court attached the property on March 25, 1968 and it was thereupon placed in storage. The instant replevin suit was filed April 4, 1968, and Kaplan, as registered service agent for Solbert, was served with petition and summons. He thereupon contacted Austin Van Buskirk, then attorney for Marco, on April 7th or April 8th, 1968, and advised Van Buskirk that Solbert did not have possession of the property; that it was under the control and in the possession of the Magistrate Court, and invited Van Buskirk to "enter Marco's appearance" in the magistrate suit. Kaplan further stated that when he was served with summons in this suit, he saw the Security Agreement attached to Marco's petition. He stated that he thereafter requested the Magistrate Court to order sale of the property even though he then knew Marco was claiming right to possession and ownership thereof under this replevin action.

In this appeal, the law of the case, as declared in the opinion of the Supreme Court in the first appeal, 490 S.W.2d 13, is binding upon this court so far as applicable to the sufficiency of the plaintiff's evidence to make a submissible case for the jury.

No amendment to the pleadings occurred preliminary to this trial and the plaintiff's evidence was substantially the same in all essential details. The law of the case rule applies where the pleadings (issues) are the same, and there is no substantial difference in the evidence. *State ex rel. Curtis v. Broaddus,* 238 Mo. 189, 142 S.W. 340, 342 (banc 1911); *Williams v. Ford Motor Company,* 454 S.W.2d 611, 614[3–5] (Mo.App. 1970), and cases cited therein.

The holdings of the court in the first appeal, as to the sufficiency of the plaintiff's evidence, was that it permitted a jury to reasonably find certain facts. Those holdings are: (1) that Marco produced evidence that it owned or was reasonably entitled to possession of the equipment (490 S.W.2d 13, 18–19[1]); (2) that Marco's status as assignee of Malt Village is not detrimental to its right to recover in replevin (490 S.W.2d 13, 19[2]); (3) that Marco produced evidence that Solbert wrongfully seized the property and wrongfully detained it (490 S.W.2d 13, 19–20[2]); and (4) that such property had not been seized under any lawful process, execution or attachment against *the property of Marco* at the time the replevin suit was instituted, as required by Section 533.010(4) RSMo 1969 (490 S.W.2d 13, 20[2]).

How then, did the testimony of Silberg and Kaplan, as above summarized, affect the force of this doctrine and its binding significance upon this court?

The thrust of defendant's evidence and the fact attempted to be established thereby is that Solbert did not have either actual or constructive knowledge of the fact that the property which it attached and sold under magistrate execution was encumbered by any prior liens or rights to Marco. That it had actual notice of Marco's claims at the time of the execution sale cannot be doubted from the testimony of Kaplan acknowledging that through the service of papers upon him and his contact with Van Buskirk, Marco's attorney, in the first days of April, 1968, he was then, at least aware of Marco's claim. The Circuit Court file herein shows that the "Order of Delivery in Replevin", above referred to, and supported by a statutory replevin bond was entered by the Circuit Court on April 4, 1968, and the petition and summons were served on Solbert corporation, via Kaplan, on April 6, 1968. Attached to the petition in replevin served on Kaplan as registered service agent for Solbert was a copy of the Security Agreement and promissory note of Baker showing the assignment thereof to Marco, thus establishing actual knowledge of Marco's lien claim. The Magistrate Court file (an exhibit in the trial below) shows that the default judgment in Solbert's rent and possession suit was entered April 22, 1968 and that the sale under execution was held on May 15, 1968, in the face of such Circuit Court order of delivery.

The ultimate decision in this case must rest upon the terms and provisions of the Uniform Commercial Code, Title XXVI, Chapter 400, RSMo 1969 (Laws 1963), and any pertinent decisions thereunder. As to the statutory effect of Kaplan's knowledge of Marco's claim, the provisions of Section 400.9–301(1)(b) apply. This section provides, *inter alia:*

"(1) Except as otherwise provided in subsection (2), an *unperfected* security interest is subordinate to the rights of

\* \* \* \* \* \*

(b) a person who becomes a *lien creditor without knowledge* of the security interest and before it is perfected;

\* \* \* \* \* \*

(2) If a secured [party] files with respect to a purchase money security interest *before* or within ten days after the *collateral comes into possession of the debtor, he takes priority over* the rights of a transferee in bulk or of *a lien creditor* which arise between the time the security interest attaches and the time of filing.

(3) A 'lien creditor' means a creditor who *has acquired a lien* on the property involved *by attachment, levy or the like* * * * (Emphasis supplied)

Under the provisions of this section, Solbert's claim as a lien creditor could arise only when a valid attachment, levy or execution arising from its judgment for rent was accomplished. Certainly, at the time of the execution and sale, it acted with full knowledge of Marco's claim to the equipment. Further, Solbert enjoyed no priority over the security interest of Marco, if such interest was *perfected* at the time of the attachment, execution or sale of Baker's property.

The question remains as to whether or not Marco's assigned security interest was in fact *perfected*. The trial court, as grounds for setting aside the judgment for Marco, stated as its reason:

" * * * The Court is of the opinion that plaintiff (Marco) failed to show it had complied with the provisions of (Section) 400.9–302(2) Revised Statutes of Missouri as would provide plaintiff (Marco) with a possessory right superior to defendant's special right, as respects creditors of Malt Village Franchising, Inc. * * * "

Section 400.9–302(2) RSMo 1969, referred to by the court, provides for the filing of a financing statement in order to protect a security interest in property. This subsection provides:

"(2) If a secured party assigns a *perfected* security interest, no filing under this article is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor." (Emphasis added)

Section 7 of the UCC Comment, following Section 400.9–302, states:

"7. The following example will explain the operation of subsection (2): Buyer (Baker) buys goods from seller (Malt Village) who retains a security interest in them which he perfects. Seller (Malt Village) assigns the *perfected* security interest to X (Marco). The security interest, in X's (Marco's) hands and without further steps on his part, continues perfected against *Buyer's* (Baker's) transferees and creditors. If, however, the assignment from Seller (Malt Village) to X (Marco) was itself intended for security (or was a sale of accounts, contract rights or chattel paper), X (Marco) must take whatever steps may be required for perfection in order to be protected against *Seller's* (Malt Village's) transferees and creditors." (Names and first emphasis added)

The perfection of a security interest, as applicable in this case, is made by filing a financing statement with the Recorder of Deeds of Jackson County, Missouri, Section 400.9–401 RSMo 1969, in the form prescribed by Section 400.9–402 RSMo 1969, and with the Secretary of State of Missouri, Section 400.9–401 RSMo 1969. It is further provided that upon filing and payment of the required fee, the filing officer shall mark such financing statement with a consecutive file number and the date and hour of filing, and shall hold the document for public inspection and shall "index the statements according to the name of the debtor". Section 400.9–403(4), RSMo 1969.

There is no dispute in the case now before this court that such a financing statement, in proper statutory form, was filed July 6, 1967, showing Baker as Debtor, Malt Village as Secured Party, Marco as Assignee, and covering the equipment involved. But Solbert asserts and the court below held that some further "steps" were required on the part of Marco to perfect its security interest. While research and the briefs of the parties have failed to disclose any reported cases in Missouri, or elsewhere, supportive of this position, none has been found to the contrary. The force of this position is destroyed, however, by the very terms of another section of the UCC and comments thereunder. Section 400.9–405(1) RSMo 1969, provides in part:

"(1) A financing statement may disclose an assignment of a security interest * * * by indication in the statement of the name and address of the assignee * * *. On presentation to the filing officer * * * the filing officer shall mark the same as provided in section 400.9–403(4).

* * * * * *

(2) (Provides for the filing of a separate statement of assignment.)

(3) After the disclosure or filing of an assignment under this section, the assignee is the secured party of record."

The Missouri Code Comment following this section states:

"This section is new, but is in keeping with common commercial practices. Subsection (1) covers the situation in which security interest has been assigned *at the time the original financing statement is filed.* Subsection (2) provides for assignment subsequent to the original filing." (Emphasis supplied)

■ Here, there was only one filing, on July 6, 1967, which disclosed the assignment to Marco on the face of the financing statement and otherwise fully complied with Section 400.9–405(1). Nothing further was required of Marco to fix its status as "the secured party of record". The provision requiring a separate or subsequent filing could only logically be applied to a full or partial assignment of the security interest at a time subsequent to the original filing, as clearly provided by Section 400.9–405(2) RSMo 1969. While it may be true that the indexing of the financing statement under the name of the debtor (in this case, Baker) undoubtedly poses difficulties for those searching the records under the name of the original secured party only (in this case, Malt Village), such is a matter for legislative and not judicial attention and correction.

The judgment below is reversed and the cause remanded with directions that the original judgment in favor of Marco Fi-nance Company against Solbert Industries, Inc. be reinstated as of the date of its entry.

All concur.